JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Robert Strickland appeals from the trial court order that granted summary judgment to plaintiff-appellee Billy A. Chambers on his claim of breach of contract.
 {¶ 2} Strickland argues in his assignment of error that he raised a genuine issue of material fact concerning the authenticity of his signatures on the relevant documents, thereby precluding summary judgment in Chambers' favor.
 {¶ 3} Upon a review of the record, this court disagrees. The trial court order, consequently, is affirmed.
 {¶ 4} The record reflects that in 1998 Chambers owned a moving and storage company called "American Van and Storage"[1] ("AVS"). Strickland performed accounting work for the company. When Chambers decided to sell AVS, Strickland saw a business opportunity, so he offered to purchase the business.
 {¶ 5} While the purchase negotiations proceeded, Strickland incorporated the "American Transportation Company" ("ATC") in order to "reserve the name" because he was anticipating "solidifying a deal to buy" AVS. The parties struck a deal for a transfer of the business in late September 1998. Three separate documents resulted, viz., an "asset purchase agreement," a "purchase agreement," and a "promissory note." Every page of every document relating to the sale and purchase of AVS bore the handwritten initials, "R.S." *Page 3 
 {¶ 6} The record reflects the asset purchase agreement went through two revisions. In both versions, the purchase price for AVS's business assets was set at $1,193,300.00, and the "buyer" was ATC, which was represented by its "President," Strickland.
 {¶ 7} The first version indicated that the parties had "signed duplicate copies of the [asset purchase] Contract" on September 17, 1998. However, one clause set the "closing" date for "September 21, 1998, unless the parties agree[d] otherwise." Another clause provided that "[a]ll funds and documents involved with the closing of this transaction shall be deposited into escrow on or before the closing date."
 {¶ 8} The second, and final, version of the asset purchase agreement was signed by the parties on October 2, 1998. In this version, the contract stated October 2, 1998 as the closing date, but still provided that "all funds and documents involved with the closing shall be deposited into escrow on or before the closing date." The agreement named Huntington National Bank as the escrow agent, and provided that the buyer would pay any expenses charged by the bank.
 {¶ 9} The second document was the purchase agreement, which was for AVS's "tangible personal property" together with a clause entitled "Trade Secrets/Covenant Not To Compete." The total price set forth for these was set forth as "$908,900.00," which was payable by the buyer in three stages: 1) $1,000.00 at the time of signing; 2) $157,900.00 at the time of closing; and 3) $750,000.00 "in the form of a note held by Seller." The purchase agreement set forth October 2, 1998 as the closing date for the transfer. *Page 4 
 {¶ 10} Similarly, the signature page of the purchase agreement bore the date October 2, 1998. It contained three separate signature clauses. First, under the word, "SELLER," Chambers signed his name in his individual capacity.
 {¶ 11} Second, under the word, "BUYER," ATC's name was typewritten. Below this appeared the typewritten word, "By:," followed by a signature, "Robert L. Strickland, Pres." Under this line was typewritten, "Robert L. Strickland, President."
 {¶ 12} However, still another signature clause appeared before the bottom of the page. This was nearly identical to the one above, except that the typewritten individual name "Robert L. Strickland" was set forth, and, in the signature above that line, the handwritten word, "Pres." was crossed through, with the initials "RLS" above the strike.[2] Each signature clause on the signature page of the purchase agreement page bore the attestations of two witnesses.
 {¶ 13} The third document resulting from the sale of AVS was a two-page promissory note dated September 21, 1998. According to its terms, "the undersigned promise[d] to pay to the order of Billy A. Chambers * * * the principal sum of * * * ($750,000.00)." The entire payment was to be made in "ninety-five" monthly installments of $9,298.93 each, "due on the twenty first day of the month, the first payment due on the 21st day of October, 1998." The "Borrower" was set forth as ATC, with an individual signature above the typewritten words, "By: Robert L. Strickland, President." *Page 5 
 {¶ 14} An additional clause entitled, "GUARANTY," followed. The text of this clause stated, "For value received, the undersigned unconditionally guarantees payment * * * under this note. The liability of the undersigned shall not be contingent on the pursuit of any remedies against the maker or any endorser, or the application of any collateral to payment of amounts due under this note." Below this clause was a signature above the name, "Robert L. Strickland."
 {¶ 15} On September 16, 2005 Chambers filed the instant action, claiming Strickland breached the purchase agreement. Chambers alleged that ATC had ceased making payments on the promissory note as of November 2004, that the remainder of the debt was due and owing, and that the amount was due against Strickland "as the guarantor" of the promissory note.
 {¶ 16} Strickland filed an answer to Chambers' claim which denied the pertinent allegations, and the matter proceeded through discovery. Chambers subsequently filed a motion for summary judgment with respect to his claim.
 {¶ 17} In his brief in support of his motion, Chambers argued that the documentary evidence demonstrated Strickland was personally liable for the breach of the purchase agreement. Chambers supported his motion with copies of the final versions of each document related to the sale and purchase of AVS, including the promissory note dated September 21, 1998, together with portions of Strickland's deposition testimony. *Page 6 
 {¶ 18} Strickland responded with a brief in opposition to Chambers' motion. Essentially, Strickland restated therein the paragraphs contained in his answer; he argued that summary judgment was inappropriate, because he denied signing any documents related to the sale and purchase prior to the final closing date of October 2, 1998.
 {¶ 19} Along with other evidentiary material, Strickland attached his affidavit to his response. In relevant part, he averred that 1) he "did not sign any documentation involving the PURCHASE AGREEMENT on either September 17, 1998, nor [sic] on September 21, 1998"; 2) "a promissory note pertaining to the PURCHASE AGREEMENT, said note in the face amount of $750,000.00, was signed"; 3) the "ACTUAL NOTE" was dated "October 2, 1998," was signed by ATC, and contained no guaranty clause; 4) the copy provided by Chambers dated September 21, 1998 "was not signed by [him]self"; 5) Strickland personally guaranteed only the clause of the purchase agreement entitled "Trade Secrets/Covenant Not To Compete"; 6) Strickland "did not obligate [him] self personally, neither as a guarantor nor in any other way, regarding the $750,000.00 obligation owed to [Chambers]"; and 7) Chambers "transferred all of his interest in any monies personally owed to him to Huntington National Bank pursuant to a Subordination Agreement, a copy of [which is] attached to th[is] response as Exhibit 4."
 {¶ 20} However, Strickland attached no "Exhibit 4" to his brief. Moreover, Strickland admitted in his affidavit that the document he called his "ACTUAL NOTE," a copy of which he attached as "Exhibit 3," lacked any signatures. A review of this document reveals, *Page 7 
moreover, that its terms differ slightly from those presented in the text of the copy dated September 21, 1998, that it concludes with a completely different second page, and that neither page bears initials.
 {¶ 21} The trial court later issued an order that granted summary judgment to Chambers on his claim for breach of contract. The court determined Strickland was "personally liable on the debt * * *."
 {¶ 22} The record reflects that the parties thereafter litigated remaining issues in the case, most importantly, that of damages. Ultimately, the trial court issued a final journal entry that stated, in pertinent part, as follows:
 {¶ 23} "Pl Billy A. Chambers motion for SJ on Atty fees and legal expenses * * * is granted.
 {¶ 24} "This court previously granted summary judgment in favor of Plaintiffs [sic] finding Defendant Strickland personally liable on the debt to Plaintiff * * *. The parties entered into a stipulation that the amount remaining due under the promissory note is $204,576.46, and, thus, plaintiff is granted judgment on that amount * * *.
 {¶ 25} "* * * Plaintiff is awarded attorney fees in the amount of $30,779.00 and legal expenses in the amount of $1075.91 against Defendant."
 {¶ 26} Strickland has filed a timely appeal from the final entry of judgment against him, but challenges only the trial court's decision to grant summary judgment to Chambers on his breach of contract claim. *Page 8 
 {¶ 27} Strickland's assignment of error states:
 {¶ 28} "The trial court erred by granting Plaintiff-Appellee Billy A.Chambers' motion for summary judgment and finding Defendant-AppellantRobert Strickland to be personally liable for the debts of AmericanTransportation Companies, Inc. to Plaintiff-Appellee where genuineissues of material [fact] exist concerning the authenticity of therelevant documents and Defendant-Appellant's purported signaturesthereon."
 {¶ 29} Strickland argues summary judgment for Chambers on his breach of contract claim was not appropriate because the evidence demonstrated a genuine issue of material fact regarding the "authenticity" of Strickland's signatures on the September 21, 1998 promissory note.
 {¶ 30} When a court considers a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to any material element of the opposing party's claims. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. If the moving party does so, the nonmovant "may not simply rest upon the mere allegations" of his pleading, but instead must file a "response, by affidavit or otherwise as provided" in Civ. R. 56(C), and "must set forth specific facts showing there is a genuine issue for trial." Civ. R. 56(E); Wing v. Anchor Media,Ltd. of Texas (1991), 59 Ohio St.3d 108. *Page 9 
 {¶ 31} A review of the record in this case reveals Strickland's response failed to demonstrate any genuine issue of material fact existed in this case.
 {¶ 32} "* * * [C]ontracts are to be interpreted to carry out the intent of the parties, which is evidenced by contractual language. * * * If a contract is clear and unambiguous then its interpretation is a matter of law and there is no issue of fact to be determined." Ohio Carpenters'Fringe Benefit Fund v. Krulak, Cuyahoga App. No. 88872, 2008-Ohio-220, ¶ 41
(citations omitted).
 {¶ 33} Each document that relates to the sale and purchase of AVS must be considered as a whole in order to interpret the intent of the parties. Purchase agreement paragraph 17 states: "This Contract may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument."
 {¶ 34} In this light, it is clear that, ultimately, October 2, 1998 was the date agreed on by the parties as the closing date for the transaction. Paragraph 5 of the purchase agreement reflects this fact. The same paragraph further required that all documents "involved with the closing of th[e] transaction shall be deposited into escrow on or before the closing date."
 {¶ 35} The first version of the asset purchase agreement set a closing date for the entire transaction on September 21, 1998. Thus, whatever revisions subsequently were made to the asset purchase agreement, with respect to the purchase agreement itself, Strickland was required to obtain $750,000.00 in financing by the date of closing to comply with his *Page 10 
obligations, since the method of financing, viz., the promissory note, had to be submitted to escrow.
 {¶ 36} Logically, therefore, by the initial date set for closing the deal, Strickland arranged for financing of that sum. This arrangement was memorialized in the September 21, 1998 promissory note.
 {¶ 37} Nothing in the record indicates Strickland obtained financing for his purchase of Chambers' business from anyone other than Chambers. Although Strickland borrowed that sum of money from Chambers on behalf of ATC, his new company, no competent evidence in the record supports a conclusion that he did not personally agree to ensure payments were made on the debt owed to his business colleague.
 {¶ 38} Chambers signed the purchase agreement in his own name, i.e., as an individual rather than as president of AVS. Similarly, Strickland removed any reference to himself as president of ATC in the final portion of the purchase agreement. Additionally, as a consequence of this arrangement, the purchase agreement calls for the first payment installment on the note to be made on October 21, 1998.
 {¶ 39} The contracts themselves, therefore, lead inescapably to the conclusion that the September 21, 1998 promissory note was genuine, and that Strickland intended to be personally liable on that debt. See,Garver v. Zuercher, Cuyahoga App. No. 85438, 2005-Ohio-4304; cf,Krulak, supra, ¶ 44. Strickland's evidence failed to rebut this conclusion.[3] *Page 11 
 {¶ 40} A review of Strickland's affidavit reveals that he essentially merely restated his denials of the pertinent allegations contained in Chambers' complaint, i.e., he relied on his answer. Moreover, despite the assertion Strickland presents in his appellate brief, he never asserted in the trial court that his signature on the promissory note was a "forgery." Rather, he made artful intimations to that effect, without ever really disputing that his signature on the promissory note was anything but genuine.
 {¶ 41} Finally, he admitted that the document he claimed was the "ACTUAL NOTE" contained no signatures, thus, it did not constitute evidence of a quality contemplated by Civ. R. 56(E).
 {¶ 42} Under the circumstances, the trial court appropriately granted summary judgment to Chambers on his claim of breach of contract.
 {¶ 43} Strickland's assignment of error, accordingly, is overruled.
 {¶ 44} The trial court's order is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and ANN DYKE, J., CONCUR
[1] Quotes are taken from evidentiary material submitted to the trial court.
[2] A typographical error also appeared.
[3] The conclusion finds additional support in the fact that, while Strickland had the opportunity to do so during the time the case remained pending in the trial court on other issues, he never sought reconsideration of the court's decision, offering further proof to rebut the evidence that demonstrated he intended to be personally liable on the promissory note. *Page 1