DECISION
{¶ 1} Plaintiffs-appellants, Renata Theresa Joiner and her sister Michael Baskett, appeal the judgment entered by the trial court in favor of the defendants-appellees, Arthur B. Simon, M.D., Joe N. Hackworth, M.D., and their practice, Comprehensive Cardiology Consultants, Inc., in a medical malpractice action.
 {¶ 2} Appellants' 72-year-old mother, Laura Corrine Baskett, was admitted to Jewish Hospital on May 10, 1997, for evaluation and treatment of chest pain. A cardiolite stress test and an abnormal electrocardiogram suggested that an area of Baskett's heart was not getting enough blood. On May 12, 1997, when Baskett was released from the hospital, her physician, Jeffrey L. Schneider, M.D., recommended that she undergo an angiogram procedure.
 {¶ 3} On May 27, 1997, Dr. Simon, a cardiologist, performed a coronary angiogram procedure upon Baskett. Dr. Simon's resulting diagnosis was that Baskett suffered from coronary artery disease with significant lesion.
 {¶ 4} On June 9, 1997, Baskett was scheduled to undergo an angioplasty procedure. Before beginning the procedure, Dr. Hackworth, an interventional cardiologist, obtained another coronary angiogram. Then, upon Dr. Hackworth's introduction of an angioplasty guide catheter into Baskett's left coronary artery and the injection of a "guide shot," Baskett suffered a dissection of the artery and a massive myocardial infarction. An emergency bypass surgery was performed, but Baskett died within hours.
 {¶ 5} Appellants filed a medical malpractice action against Dr. Simon, Dr. Hackworth, and their practice. A jury trial resulted in a verdict in favor of the doctors. The trial court overruled appellants' motions for judgment notwithstanding the verdict (JNOV) and for a new trial.
 Allegations of False Testimony {¶ 6} In their first assignment of error, appellants now argue that the trial court erred by denying their Civ.R. 59(A) motion for a new trial, where the verdict was based upon false testimony given at trial. We review the denial of a motion for a new trial for an abuse of discretion.[1] Unless the trial court's decision was unreasonable, arbitrary, or unconscionable, we will not disturb it on appeal.[2]
 {¶ 7} Generally, juries are charged with determining whether a witness is telling the truth or is mistaken.[3] But "in the event that a jury does not detect and disregard false testimony, the trial court and the [c]ourt of [a]ppeals each has a clear duty to grant a new trial on the weight of the evidence where it appears probable that a verdict is based upon false testimony."[4] So where a motion for a new trial is predicated upon a claim that the verdict was based upon false testimony, the movant must establish that a witness testified falsely at trial and that the verdict was based on the false testimony.[5]
 {¶ 8} In this case, appellants direct us to the cross-examination of Dr. Hackworth. Appellants' counsel asked Dr. Hackworth whether he had reviewed Dr. Simon's angiogram report before he had performed Baskett's angioplasty procedure. Dr. Hackworth responded that he had. Appellants contend that Dr. Hackworth's testimony on this point was false because Dr. Simon's report, though dictated on May 27, 1997, had not been transcribed into typewritten form until June 11, 1997, two days after Baskett's death.
 {¶ 9} On the record before us, we cannot conclude that Dr. Hackworth's testimony was false. Baskett's medical chart from May 27, 1997, contained Dr. Simon's handwritten notation of his findings. Dr. Simon testified that he had dictated a "procedure report" containing those findings later that same day, using the hospital's dictation system. The report was later transcribed on June 11, 1997.
 {¶ 10} Following the May 27, 1997, procedure, Dr. Simon showed the angiogram film to Dr. Hackworth. Dr. Hackworth testified that Dr. Simon had asked him to look at the film to render an opinion on whether Baskett was a candidate for angioplasty.
 {¶ 11} Then, during Baskett's June 3, 1997, office visit, Dr. Simon again showed Baskett's angiogram film to Dr. Hackworth and asked him to speak with Baskett about it. Dr. Hackworth then met with Baskett for the first time.
 {¶ 12} In light of the evidence that Dr. Hackworth had discussed Baskett's angiogram results with Dr. Simon and had seen firsthand the angiogram film on two occasions before he performed the angioplasty procedure, the jury could reasonably have concluded that Dr. Hackworth was simply mistaken about having read Dr. Simon's typewritten angiogram report before performing the angioplasty.
 {¶ 13} Appellees argue that the appellants had the opportunity to cross-examine Dr. Hackworth about the discrepancy but that they had "waited until closing argument to tell the jury of the transcription date." Unfortunately, the closing arguments were not transcribed and made part of the record on appeal. We note, though, that, in the trial court, the appellants had stated in their motion for a new trial, "As the court may recall, in closing argument[,] [appellants'] counsel pointed out to the jury that such testimony was undeniably false since by the defendants' own records, such report had not even been created until several days after the decedent had died."
 {¶ 14} Had the appellants' trial strategy been to deny Dr. Hackworth an opportunity to explain the transcription date so that they could exploit his lack of explanation for it during closing argument, the jury's verdict in favor of the appellees would indicate that it found the discrepancy to be insignificant. Regardless of whether the appellants had informed the jury of the discrepancy during closing argument, our conclusion would not change.
 {¶ 15} Because appellants have failed to demonstrate that Dr. Hackworth's testimony was false, thereby preventing a determination that the jury's verdict was based upon false testimony, we hold that the trial court did not abuse its discretion in denying their motion for a new trial. The first assignment of error is overruled.
 Allegations of Misconduct by Defense Counsel {¶ 16} In their second assignment of error, appellants argue that the trial court erred in permitting misconduct by defense counsel during trial. Appellants contend that defense counsel asked each of them improper questions during cross-examination, was disrespectful to their expert witness, Joel Kahn, M.D., and made an inappropriate "speaking objection."
 {¶ 17} We first address appellants' contentions that defense counsel's cross-examination tactics were inappropriate. It is well settled that the scope of cross-examination and the admissibility of evidence during cross-examination are matters that rest within the sound discretion of the trial court.[6] So we will not disturb the trial court's determination with respect to the admission or exclusion of evidence unless there has been a clear and prejudicial abuse of discretion.[7]
 {¶ 18} During the cross-examinations of appellants, defense counsel asked them whether their sister Cathy had wanted the action to be filed and whether Cathy intended to testify at trial. The trial court sustained objections by appellants' counsel to both questions. The court sua sponte instructed the jury that if the court sustained an objection to a question, the jury was to ignore the question and any suggestion arising from the question. Appellants cannot predicate error on objections that were sustained by the trial court.[8]
 {¶ 19} During Joiner's direct examination, she testified that she, Michael, and Cathy had decided that they would go to Christ Hospital the week following their mother's death "to find out what was going on. * * * [But Cathy] didn't show up, so it was me and Michael." Joiner also testified that Cathy had been their mother's "rock," and that she had accompanied their mother to each of her appointments with Dr. Simon and Dr. Hackworth.
 {¶ 20} On cross-examination, defense counsel asked Joiner whether it was true that her sister Cathy had not wanted to be "part of this lawsuit." We cannot say that the trial court abused its discretion in allowing counsel's question, because the question related to Joiner's testimony on direct examination. Moreover, appellants have not demonstrated that they suffered prejudice as a result of the question.
 {¶ 21} Next, appellants refer us to their cross-examination of Dr. Simon. Appellants' counsel asked Dr. Simon whether he had read certain records from the decedent's treating physician. Dr. Simon responded that appellants' counsel had not provided those records to the defense until after he had been deposed, and upon further questioning, Dr. Simon suggested that appellants' counsel had been "sort of stonewalling us on getting those records." The court interrupted Dr. Simon and instructed him to answer the question.
 {¶ 22} Appellants' counsel then asked, "Doctor, did you know that my client signed an authorization for your attorneys to get every record in this case?" Defense counsel objected and stated, "That's not true. That's absolutely not true." The court immediately sustained the objection, instructed both counsel to stop arguing, and struck Dr. Simon's "stonewalling" remark from the record. We see no error by the trial court where it promptly intervened to admonish counsel and to have the offending testimony stricken from the record.
 {¶ 23} Finally, appellants argue that, during Dr. Kahn's deposition, defense counsel was disrespectful. Appellants direct us to two interruptions by defense counsel during Dr. Kahn's responses. To justify his actions, defense counsel noted that Dr. Kahn had not been responding to his questions. We cannot say that defense counsel's behavior in these instances was so aggressive or contemptuous that it instilled prejudice in the trial. The second assignment of error is overruled.
 Evidentiary Issues {¶ 24} In their fourth assignment of error, appellants argue that the trial court erred by excluding from evidence an undated letter that had purportedly been mailed to Baskett after her death. Appellants offered the letter as proof that Dr. Simon had told Baskett that her condition could be managed by medication and by her participation in a cardiac rehabilitation program. According to appellants, their testimony that they were present when the letter was opened had laid a sufficient foundation for the letter to be admitted into evidence.
 {¶ 25} During Michael Baskett's direct examination, appellants' counsel asked her whether she had obtained information concerning a cardiac rehabilitation program at Jewish Hospital. Michael testified that a letter had been mailed to her mother from that program, inviting her to attend the program based upon a referral from her physician. The trial court sustained defense counsel's motion to strike Michael's response.
 {¶ 26} During Joiner's direct examination, counsel also asked about the letter. Joiner testified that the letter had arrived within a week or two after her mother's death, and that it had instructed her mother to schedule an appointment for cardiac rehabilitation. The trial court sustained defense counsel's motion to strike Joiner's response.
 {¶ 27} Generally, the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be.[9] In this case, the evidence simply was insufficient to show that the letter was what appellants claimed it to be: advice from Dr. Simon that Baskett's condition could be managed by rehabilitation. Even if appellants had satisfied the authentication requirement to the extent that testimony described the item as a piece of mail recovered from their mother's mailbox, this testimony did not render the letter admissible to show the doctor's advice.
 {¶ 28} Accordingly, the trial court properly excluded the letter from evidence. The fourth assignment of error is overruled.
 Lack of Informed Consent {¶ 29} The third and sixth assignments of error relate to the appellants' lack-of-informed-consent claim. Appellants challenge the constitutionality of Ohio's patient-consent-form statute, R.C. 2317.54, as well as the trial court's application of the statute at trial.
 A. R.C. 2317.54 is Constitutional {¶ 30} While a patient's consent must be informed to be effective, it need not be in writing.[10] Informed consent may be given orally.[11] But if consent is in writing and complies with the requirements of R.C. 2317.54, a statutory presumption arises that the consent is valid and effective.[12]
 {¶ 31} In their sixth assignment of error, appellants argue that the trial court erred by failing to hold that R.C. 2317.54 is unconstitutional. They argue that the statute violates a person's right to a jury trial because it directs the jury to a single conclusion. Appellants cite no authority for their position.
 {¶ 32} It is well settled that Ohio statutes are entitled to a strong presumption of constitutionality.[13] Any doubt as to the constitutionality of a statute must be resolved in favor of its validity.[14]
 {¶ 33} The statute in question, R.C. 2317.54, establishes a presumption that written consent for a medical or surgical procedure is valid and effective if it meets certain requirements. First, the consent must set forth in general terms the nature and purpose of the procedure, what it is expected to accomplish, any reasonably known risks, and the names of the physicians who will perform the procedure.[15] Second, the person giving the consent must acknowledge that such disclosure of information has been made and that all questions asked about the procedure have been satisfactorily answered.[16] Finally, the consent must be signed by the patient or by a person who has legal authority to consent on behalf of the patient.[17]
 {¶ 34} The statutory presumption may be rebutted by "proof by a preponderance of the evidence that the person who sought such consent was not acting in good faith, or that the execution of the consent was induced by fraudulent misrepresentation of material facts, or that the person executing the consent was not able to communicate effectively in spoken and written English or any other language in which the consent is written." So in the absence of bad faith, fraud, or a lack of fluency, a patient may not dispute the validity of a consent obtained through the use of a written form.[18]
 {¶ 35} Appellants argue that the statute violated their right of trial by jury, as guaranteed by Section 5, Article I of the Ohio Constitution, which includes the right to have a jury determine all questions of fact.[19] Contrary to appellants' position, R.C. 2317.54 does not invade the province of the jury by compelling a single conclusion. Rather, the statute only establishes a rebuttable presumption. "[O]nce a presumption is met with sufficient countervailing evidence, it falls and the presumption serves no further function."[20] The statutory presumption takes no question of fact from the trier of fact.
 {¶ 36} Because R.C. 2317.54 does not infringe upon a plaintiff's right to a jury trial, we hold that the trial court properly determined that appellants had failed to overcome the presumption that the statute was constitutional. The sixth assignment of error is overruled.
 B. Informed Consent {¶ 37} In their third assignment of error, appellants argue that the trial court erred by permitting evidence other than the consent form signed by Baskett to be considered by the jury. They argue that the trial court should not have allowed Dr. Hackworth to testify about his discussions with Baskett.
 {¶ 38} Appellants direct us to their counsel's cross-examination of Dr. Hackworth, where counsel asked Dr. Hackworth whether he had told Baskett "any percentages of her risk of dying from this procedure." Dr. Hackworth responded that when Baskett had asked him about the risk of having "major problems," he told her that "there was about a one in one hundred chance of having to have emergency surgery. * * * I did tell her there was a risk that she could die. I told her there's a risk she could have a stroke."
 {¶ 39} Appellants now argue that Dr. Hackworth should not have been allowed to testify about "what [he had] told and discussed with [the] decedent," even though their counsel had specifically asked Dr. Hackworth about his explanation to Baskett of the procedure's risks.
 {¶ 40} In support of their argument that the testimony should not have been permitted, appellants rely on R.C. 2317.54. They contend that even if it is assumed that Baskett's consent was valid and effective, the statute mandated that "no evidence shall be admissible to impeach, modify, or limit the authorization for performance of the procedure or procedures set forth in such written consent."[21]
 {¶ 41} This court has recognized the "subtle but distinct difference" between the issues of informed consent and written consent.[22] We have noted that "[t]his difference has been recognized by the Eleventh Appellate District, which has stated that `[a]ppellant's argument * * * interchanges the concept of informed consent [and] the more narrow question of a written consent form. R.C. 2317.54 provides that written consent is presumed to be valid and effective if it conforms to the specific requirements described by that section. The use of a written consent form under R.C. 2317.54 has no separate impact on the common law rights and liabilities that exist between a physician and a patient.'"[23]
 {¶ 42} In Ohio, a plaintiff may establish a claim for lack of informed consent where "(a) [t]he physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any; (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."[24]
 {¶ 43} A party disputing a lack of informed consent is entitled to explain the meaning of the consent form and what information was provided to the patient before the form was signed.[25] Under these circumstances, the trial court did not abuse its discretion by allowing Dr. Hackworth to testify about his statements to Baskett about the procedure's risks. The third assignment of error is overruled.
 Denial of Motions for JNOV and for a New Trial {¶ 44} In their fifth and seventh assignments of error, appellants argue that the trial court erred by failing to grant their motions for JNOV and for a new trial. They argue that the court's ruling was erroneous because "the evidence was that the decedent was not a `standard' patient, yet the only consent form she signed set forth the `standard' risks." The appellants further argue that the verdict was not supported by the evidence and that the jury had clearly lost its way in arriving at its verdict for the doctors.
 {¶ 45} While we review a trial court's ruling on a motion for a new trial for an abuse of discretion, our review of a ruling on a JNOV motion is de novo.[26] In reviewing a JNOV motion, a court must construe the evidence most strongly in favor of the party against whom the motion is made and determine whether reasonable minds could have reached a conclusion in favor of the non-moving party.[27] If reasonable minds could have reached different conclusions, the motion must be denied.[28]
 A. Use of "Standard" Consent Form {¶ 46} Appellants contend that an angioplasty procedure had presented a greater risk to Baskett because "she was a conglomeration of substantial risks," so that the use of a standardized consent form had resulted in a lack of informed consent. Appellants cite no authority for this proposition.
 {¶ 47} The consent form signed by Baskett provided in part, "The serious complications [of the angioplasty procedure] include but are not limited to death (5 out of 1000 patients), heart attack (less than 2 out of 100 patients), stroke (1 out of 1000 patients), emergency surgery (less than 2 out of 100 patients), perforation (less than 1 out of 100 patients) and loss of limb (less than 1 in 10,000). Additional and less serious complications include but are not limited to bleeding, vascular damage, infection, dye reaction, and arrhythmia (less than 2 out of 100 patients).
 {¶ 48} " * * * I am aware that as a result of this procedure, immediate open heart surgery may be required. * * * The procedure, its alternatives, and any possible additional procedures that may become necessary, including open heart surgery, have been explained to me by my physician. My physician has further explained the risks, complications, and discomforts which may result from the procedure and any additional procedures should they become necessary. (These may include severe blood loss, infection, stroke, or death). My doctor has answered all questions I have about my procedure. I understand that it is felt that the benefits of the procedure outweigh the risks, and I willingly give consent to my physician to proceed with the procedure."
 {¶ 49} Appellants' expert witness, Dr. Kahn, an interventional cardiologist, testified that the risks that should have been explained to Baskett included "a risk of dying in the range of one to one and a half percent * * *, a risk of needing an emergency bypass surgery probably in the range of about two percent or three percent * * *, a risk of suffering a heart attack in the range of one to three or four percent, depending on how you define it, and then other complications, like bleeding and injury to arteries and such." We note that the risk percentages given by Kahn essentially confirmed those listed in the form signed by Baskett.
 {¶ 50} Interventional cardiologist John Rodney Resar, M.D., testified as an expert witness for the defense. In Resar's opinion, the consent form signed by Baskett had appropriately set forth the risks and benefits of the angioplasty procedure. Dr. Hackworth testified that the consent form signed by Baskett was adequate, and that nothing in Baskett's anatomy or clinical presentation had increased her risk of complications from angioplasty.
 {¶ 51} Upon our review of the record, we conclude that reasonable minds could have differed as to whether the defendants had failed to disclose to Baskett the material risks of angioplasty. Accordingly, the trial court did not err by overruling the appellants' JNOV motion. Moreover, given the negligible differences between the percentages of various risks indicated by Kahn and the percentages of the same risks listed on the form signed by Baskett, we conclude that the trial court did not abuse its discretion in overruling the appellants' motion for a new trial based upon the "standard" consent form. The fifth assignment of error is overruled.
 B. Verdict Supported by the Evidence {¶ 52} In their seventh assignment of error, appellants argue that the trial court erred by failing to grant their JNOV motion or their motion for a new trial because the verdict was not supported by the evidence. In ruling on a motion for a new trial where the movant claims that a judgment is against the manifest weight of the evidence, the court must weigh the evidence and determine the credibility of witnesses.
 {¶ 53} After reviewing the record, we conclude that competent, credible evidence presented at trial supported a verdict in favor of the defendants. Consequently, we conclude that the verdict was not against the weight of the evidence. The seventh assignment of error is overruled.
 Surprise Testimony {¶ 54} The discovery rules are designed to eliminate surprise caused by the presentation of undisclosed expert opinions at trial.[29] To that end, a party must "provide opposing counsel with updated and complete discovery regarding the substance of expert testimony * * * because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced."[30]
 {¶ 55} In their eighth assignment of error, appellants argue that the trial court erred by permitting surprise testimony by defense expert Bruce Waller, M.D., and by Dr. Hackworth. First, appellants contend that Dr. Waller had failed to comply with the court's pretrial order because he had not issued a written report. They argue that, during his discovery deposition, Dr. Waller had not mentioned chronic pulmonary obstructive disease, but that, at trial, he had testified that Baskett suffered from the disease.
 {¶ 56} We are unable to determine whether Dr. Waller's trial testimony differed from his discovery deposition testimony because his trial testimony is not part of the record before us. Dr. Waller's videotaped trial deposition was played for the jury at trial, but it was not transcribed.[31] Moreover, appellants' objection was untimely. The trial court noted that appellants had failed to object to Dr. Waller's trial testimony until the sixth day of trial, even though his deposition had been taken prior to the trial. As a result, appellants failed to bring the potential error to the trial court's attention so that it could have taken corrective action.
 {¶ 57} Next, appellants argue that the trial court erred by allowing Dr. Hackworth to change his opinion about Baskett's cause of death. At trial, Dr. Hackworth testified that "it wasn't only the myocardial infarction that caused her death." This opinion was consistent with Dr. Hackworth's testimony during his discovery deposition, where he had agreed that Baskett had died as a result of what the dissection had caused. At no time did Dr. Hackworth dispute that the dissection had been the triggering event of Baskett's death. Accordingly, appellants failed to demonstrate surprise.
 {¶ 58} Consequently, we find no abuse of discretion by the trial court in allowing the opinion testimony by Drs. Waller and Hackworth. The eighth assignment of error is overruled.
 Jury Instructions {¶ 59} In their ninth assignment of error, appellants argue that the trial court erred by failing to properly instruct the jury with respect to foreseeability. The court's instruction, taken largely from the standard Ohio Jury Instructions, was as follows: "Foreseeability: In deciding whether ordinary care was used, you will consider whether Dr. Simon or Dr. Hackworth ought to have foreseen under the circumstances that the natural and probable result of an act or failure to act would cause injury to the plaintiff. The test of foreseeability is not whether he should have foreseen the injury precisely as it happened to the specific person. The test is whether under all the circumstances a reasonably careful person would have anticipated that injury was likely to result to someone from the act or failure to act." (Emphasis added.)
 {¶ 60} Appellants contend that the trial court should have included the word "an" between the words "that" and "injury" in the final sentence of the instruction. They argue that because the complication that caused Baskett's death was known but rare, the "defendants are logically off the hook with this instruction." Appellants fail to cite any authority for their position or to indicate how the defendants were allowed "off the hook."
 {¶ 61} It appears that appellants are contending that, from the phrase "that injury," the jury may have interpreted the word "that" to have been used as a demonstrative adjective, as in "that (particular) injury," rather than as a relative pronoun to introduce a subordinate clause, as in "that something would occur." But this reading would take the phrase out of the context of the court's foreseeability instruction as a whole. Taken as a whole, the trial court's foreseeability instruction was sufficiently clear to allow the jury to understand the relevant law.
 {¶ 62} Moreover, appellants failed to object to this instruction at a time when the trial court could have corrected any claimed error. Under these circumstances, we hold that they have waived the right to object to the instruction on appeal.[32]
Accordingly, the ninth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PAINTER, P.J., and WINKLER, J., concur.
RALPH WINKLER, retired, of the First Appellate District, sitting by assignment.
[1] Sharp v. Norfolk W. Ry. Co., 72 Ohio St.3d 307, 312,1995-Ohio-224, 649 N.E.2d 1219.
[2] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
[3] Tanzi v. New York Cent. RR. Co. (1951), 155 Ohio St. 149, 153,98 N.E.2d 39.
[4] Id.
[5] See Ward-Sugar v. Collins, 8th Dist. No. 87546, 2006-Ohio-5589, at ¶ 4, citing Tanzi, supra.
[6] O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163,407 N.E.2d 490.
[7] Id.
[8] Werden v. Childrens Hosp. Med. Ctr., 1st Dist. No. C-040889,2006-Ohio-4600, at ¶ 54, citing Bowden v. Annenberg, 1st Dist. No. C-040499, 2005-Ohio-6515, at ¶ 19.
[9] Evid.R. 901(A).
[10] R.C. 2317.54.
[11] Cardinal v. Family Foot Care Centers, Inc. (1987),40 Ohio App.3d 181, 532 N.E.2d 162; Bedel v. University of Cincinnati Hosp. (1995),107 Ohio App.3d 420, 427, 669 N.E.2d 9.
[12] R.C. 2317.54.
[13] State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142,128 N.E.2d 59, paragraph one of the syllabus; Ottawa Cty. Bd. of Commrs.v. Marblehead (1999), 86 Ohio St.3d 43, 46, 1999-Ohio-80,711 N.E.2d 663.
[14] Dickman, supra, at 149, 128 N.E.2d 59.
[15] R.C. 2317.54(A).
[16] R.C. 2317.54(B).
[17] R.C. 2317.54(C).
[18] See Foreman v. Hsu (Sept. 30, 1998), 11th Dist. No. 96-T-5559.
[19] See Sorrell v. Thevenir, 69 Ohio St.3d 415, 421-422,1994-Ohio-38, 633 N.E.2d 504; Galayda v. Lake Hosp. Sys.,71 Ohio St.3d 421, 1994-Ohio-64, 644 N.E.2d 298.
[20] Staff Notes to Evid.R. 301.
[21] R.C. 2317.54.
[22] Werden, supra, at ¶ 132.
[23] Id. at ¶ 133, quoting Foreman, supra.
[24] Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 477 N.E.2d 1145, syllabus.
[25] Werden, supra, paragraph eight of the syllabus.
[26] See Estate of Cowling v. Estate of Cowling, 109 Ohio St.3d 276,2006-Ohio-2418, 847 N.E.2d 405.
[27] Posin v. A.B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275, 344 N.E.2d 334.
[28] Id.
[29] Shumaker v. Oliver B. Cannon Sons, Inc. (1986),28 Ohio St.3d 367, 370, 504 N.E.2d 44; Jones v. Murphy (1984), 12 Ohio St.3d 84, 86,465 N.E.2d 444.
[30] Shumaker, supra.
[31] As the parties are aware, the trial exhibits in this case were destroyed. A later stipulation prepared by the parties in an attempt to reconstruct the missing exhibits did not include Dr. Waller's testimony.
[32] See Civ.R. 51(A); Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 436 N.E.2d 1001, paragraph one of the syllabus.