[Cite as *Pierce v. Durrani*, 2015-Ohio-2835.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

CRYSTAL PIERCE,                          :       APPEAL NO. C-140276
                                                 TRIAL NO. A-1200265
    Plaintiff-Appellee,             :
                                                 *O P I N I O N.*
  vs.                                    :

ABUBAKAR ATIQ DURRANI, M.D.,              :

  and                                    :

CENTER FOR ADVANCED SPINE                 :
TECHNOLOGIES, INC.,
                                          :
    Defendants-Appellants,
                                          :
  and
                                          :
THE CHRIST HOSPITAL, et al.,

    Defendants.                     :


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 15, 2015


*Erica Deters*, for Plaintiff-Appellee,

*Lindhorst & Dreidame Co., L.P.A.*, *Michael F. Lyon* and *Bradley D. McPeek*, for
Defendants-Appellants.


Please note:  this case has been removed from the accelerated calendar.

**MOCK, Judge.**

{¶1}   Defendants-appellants Abubakar Atiq Durrani, M.D., and Center for Advanced Spine Technologies, Inc., (collectively "Durrani") appeal from a judgment entered in favor of plaintiff-appellee Crystal Pierce following a jury trial.

## I.   Facts and Procedure

{¶2}   The record shows that Pierce had a history of back and neck pain. In 2007, Dr. Paul Cohen performed C6-C7 lumbar fusion on Pierce to try to relieve her pain. But that procedure did not provide her with lasting improvement. In 2009, she again saw Cohen, who proposed conservative treatment with steroids and physical therapy. If those treatments failed, he proposed more surgery.

{¶3}   Pierce sought a second opinion from Durrani, who told her that she would be paralyzed if he did not perform surgery. He ultimately performed two surgeries on Pierce. On January 28, 2009, he performed an anterior cervical discectomy and fusion of the C5 and C6 vertebrae, to address her recurring symptoms of numbness and pain. She reported to him after the first surgery that her symptoms were much improved. Durrani told her that she still needed the second surgery or she would be paralyzed.

{¶4}   On January 30, 2009, Dr. Durrani performed a posterior cervical laminoplasty at the C6 to C7 vertebrae, purportedly to relieve spinal cord stenosis and the resulting pressure on Pierce's spinal cord. Pierce awoke from that procedure in excruciating pain. Despite receiving postoperative care and engaging in physical therapy, her pain continued, forcing her to take a leave of absence from her job. She eventually went to the Christ Hospital emergency room due to extreme pain. The

emergency room personnel conducted a CT scan, which showed a displaced screw. They advised her to follow up with her surgeon.

{¶5} When she went to see Durrani, he stated that the other medical providers did not know what they were talking about and that he had meant to put the screw that way. Pierce eventually saw a pain specialist, who advised her that the pain would not resolve until the hardware was removed. Pierce returned to Cohen for treatment. In October 2009, Cohen performed surgery and removed the hardware from Durrani's surgeries. Pierce's pain resolved a short time later.

{¶6} Pierce subsequently filed a medical-malpractice suit against Durrani. While the case was pending, Durrani was indicted for several criminal offenses. He lost his medical license and, shortly before trial, he fled from Ohio to his native Pakistan. He was also the subject of substantial media attention. The trial court found that the criminal charges and Durrani's flight were unrelated to Pierce's claims against him. Therefore, evidence related to those offenses would not be admissible. The court stated that it would instruct the jury that Durrani had chosen not to be present at the trial, but that he was represented by counsel and that the case would proceed without him.

{¶7} At trial, Pierce's expert witness testified that the second surgery was unnecessary, that Durrani had frightened Pierce into undergoing the surgery, and that the surgery deviated from the standard of care for a spine surgeon. The expert also testified that the improper placement of screws and plates during the second surgery had caused some of the pain that Pierce subsequently experienced.

{¶8} After hearing the evidence, the jury returned a verdict in favor of Pierce. It awarded her $40,000 in economic damages, $500,000 in noneconomic damages, and $500,000 in punitive damages. The trial court reduced the noneconomic damages to $250,000, and entered judgment for Pierce in the amount of $790,000. Durrani filed

motions for judgment notwithstanding the verdict ("JNOV") and for a new trial. The trial court overruled those motions, and this appeal followed.

## II. Standards of Review

{¶9} Durrani presents two assignments of error for review. In both assignments of error, he contends that the trial court erred in overruling his motions for JNOV and for a new trial.

{¶10} We review a decision to grant or deny a motion for JNOV de novo. A JNOV is proper if, upon viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could come to but one conclusion in favor of the moving party. *Goodyear Tire and Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 3-4; *Fehrenbach v. O'Malley*, 1st Dist. Hamilton No. C-100730, 2011-Ohio-5481, ¶ 17. But where substantial evidence upon which reasonable minds could reach different conclusions exists to support the nonmoving party's side of the case, the court must deny the motion. *Osler v. Lorain*, 28 Ohio St.3d 345, 347, 504 N.E.2d 19 (1986); *Fehrenbach* at ¶ 17. We review a motion for a new trial under an abuse-of-discretion standard. *Fehrenbach* at ¶ 17; *Eysoldt v. GoDaddy.com, Inc.*, 194 Ohio App.3d 630, 2011-Ohio-2359, 957 N.E.2d 780, ¶ 18 (1st Dist.).

## III. Juror Misconduct

{¶11} Durrani argues that, because of juror misconduct, the trial court should not have overruled his motion for a new venire, which denied him a fair trial. Therefore, the court should have granted his post-trial motion for a new trial. This assignment of error is not well taken.

{¶12} A trial court should not grant a new trial on the basis of juror misconduct unless the complaining party has shown prejudice. *Koch v. Rist*, 89 Ohio

St.3d 250, 251, 730 N.E.23d 963 (2000); *Suliman v. Open Door West*, 8th Dist. Cuyahoga No. 71582, 1997 Ohio App. LEXIS 2088, *4 (May 15, 1997).

> Where there has been irregularity or misconduct on the part of the jury, which might affect its judgment, or improperly influence the verdict, a new trial should be granted. Where, however, it clearly appears that no improper effect could arise from the alleged misconduct, the verdict should stand.

*Armleder v. Lieberman*, 33 Ohio St. 77 (1877), paragraph one of the syllabus.

{¶13} The record shows that on the second day of trial, prospective juror number 33 reported that while she was seated at a table with three other prospective jurors, another prospective juror had been asking why Durrani had not been charged criminally. The parties agreed that juror number 33 should be removed after she stated that this discussion might affect her opinions on the case. Durrani moved to dismiss the venire and call a second venire. The trial court said that it was not denying the motion, but that it would like to question the jurors further.

{¶14} Subsequently, juror number 33 provided the names of the other three people sitting at the table, and the court determined that those three people were not on the panel. Voir dire continued and the jury was seated, without any major issues. Durrani makes only vague assertions that other prospective jurors could have overheard the comments, and that the jury could not have been impartial. Therefore, he has failed to demonstrate prejudice. *See Brooks v. Wilson*, 98 Ohio App.3d 301, 304-305, 648 N.E.2d 552 (9th Dist.1994).

{¶15} The trial court's decision to overrule Durrani's motion for a new trial on the basis of juror misconduct was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See Blakemore v. Blakemore*, 5

Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983); *Cincinnati v. Harrison*, 1st Dist. Hamilton No. C-090702, 2010-Ohio-3430, ¶ 7. Therefore, the trial court did not err in overruling his motion for a new trial on that basis, and we overrule Durrani's first assignment of error.

### IV. Attorney Misconduct

{¶16} In his second assignment of error, Durrani contends that the trial court should have granted his motion for a new trial because misconduct by Pierce's attorney denied him a fair trial. He argues that counsel improperly attacked him on irrelevant topics, particularly on his absence from the trial in violation of the trial court's order, and that counsel's improper comments prejudiced him. We find no merit in this argument.

{¶17} A trial atmosphere tainted with passion and prejudice is grounds for reversal. *Wynn v. Gilbert*, 1st Dist. Hamilton No. C-060457, 2007-Ohio-2798, ¶ 34. Remarks or arguments that are not supported by the evidence and are designed to arouse passion or prejudice to the extent that there is a substantial likelihood that the jury may be misled are improper. *Roetenberger v. Christ Hosp.*, 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441, ¶ 9 (1st Dist.); *Furnier v. Drury*, 163 Ohio App.3d 793, 2004-Ohio-7362, 840 N.E.2d 1082, ¶ 10 (1st Dist.). Counsel must refrain from unwarranted attacks on opposing counsel, the opposing party, and the witnesses. *Roetenberger* at ¶ 9; *Furnier* at ¶ 10.

{¶18} The trial court has a duty to see that counsel's statements stay within proper limits and to prohibit counsel from creating an atmosphere of passion and prejudice. *Roetenberger* at ¶ 9; *Furnier* at ¶ 10. It should not permit abusive conduct, and it has a duty to intervene sua sponte to correct the prejudicial effect of misconduct. *Pesek v. Univ. Neurologists Assn., Inc.*, 87 Ohio St.3d 495, 501, 721 N.E.2d 1011 (2000);

6

*Fehrenbach*, 1st Dist. Hamilton No. C-100730, 2011-Ohio-5481, at ¶ 19. But a trial court's duty to intervene does not apply where counsel's arguments are based on the evidence. *Fehrenbach* at ¶ 19; *Wynn* at ¶ 34.

{¶19} The record does not show any egregious conduct on Pierce's counsel's part that denied Durrani a fair trial. Pierce's counsel commented on Durrani's absence, but generally in response to arguments by Durrani's counsel, especially Durrani's inference that Pierce's witnesses were not to be believed because they did not testify in person but by deposition. He also discussed Durrani's absence in the context of not being able to cross-examine him during the trial, but only at a deposition taken years before. Simply put, the trial was not the "dog and pony show" that Durrani portrays it to be. Pierce's counsel used the trial court's language, that Durrani "had elected" not to attend the trial, and did not specify why Durrani was not present. Durrani's counsel did not object to many of the remarks, and they were, for the most part, fair comments on the evidence.

{¶20} Counsel's conduct did not affect the basic fairness and integrity of the proceedings and did not rise to the level of the sort of gross and abusive tactics that this court has found in the past to be plain error. *See Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3968, 894 N.E.2d 377, ¶ 35 (1st Dist.). Where the record supports the trial court's finding that counsel's conduct did not affect the outcome of the trial, an order denying a new trial is not an abuse of discretion. *Fehrenbach* at ¶ 23. On the record before us, we cannot hold that the trial court's decision to overrule Durrani's motion for a new trial on the basis of attorney misconduct was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See Blakemore*, 5 Ohio St.3d at 218, 450 N.E.2d 1140; *Fehrenbach* at ¶ 24.

### V. Jury Interrogatories

{¶21} In his second assignment of error, Durrani also contends that the trial court erred in denying his motion for JNOV on Pierce's fraud claim. He argues that the jury's finding that Durrani misrepresented the need for Pierce's second surgery is inconsistent with its finding that Pierce gave informed consent for the procedure. We find no merit in this argument.

{¶22} Civ.R. 49(B) states that when one or more of the answers to the jury interrogatories are inconsistent with the general verdict, the trial court may enter judgment in accordance with the answers, return the jury for further deliberation, or order a new trial. But, if the jury's interrogatories are consistent with the general verdict, the court should enter judgment in accordance with the verdict. *Colvin v. Abbey's Restaurant*, 85 Ohio St.3d 535, 709 N.E.2d 1156 (1999), paragraph one of the syllabus; *Bleh v. Biro Mfg. Co.*, 142 Ohio App.3d 434, 439, 756 N.E.2d 121 (1st Dist.2001).

{¶23} The party challenging a general verdict bears the burden to show that the interrogatories are inconsistent with the general verdict. *Nowell v. Aldridge*, 1st Dist. Hamilton No. C-930168, 1994 Ohio App. LEXIS 3450, *10-11 (Aug. 10, 1994), citing *Becker v. BancOhio Natl. Bank*, 17 Ohio St.3d 158, 162-163, 478 N.E.2d 776 (1985). In the event of inconsistent answers to interrogatories, the court has a duty to harmonize them if possible. *Klever v. Reid Bros. Express*, 151 Ohio St. 467, 476, 86 N.E.2d 608 (1949). "It is only where the answers to interrogatories are inconsistent or in direct conflict with each other so that it is impossible to harmonize them that they cancel each other and should be disregarded by the court." *Nowell* at *11, citing *Klever* at 476.

{¶24} In the second interrogatory, the jury stated that it had found "by the greater weight of the evidence that, plaintiff, Crystal Pierce, gave informed consent" for the second surgery. In the fifth interrogatory, the jury stated that it had found "by the

greater weight of the evidence that defendant, Dr. Durrani, fraudulently misrepresented the necessity" for the second surgery. It also found in a separate interrogatory that the fraudulent misrepresentation was a proximate cause of Pierce's injury. Durrani contends that the answers to the second and fifth interrogatories were inconsistent and irreconcilable. We disagree.

{¶25} At trial, Pierce argued that Durrani had fraudulently misrepresented the need for the second surgery, falsely stating that she would be paralyzed without it. Regarding informed consent, she made more of a technical argument. She contended that Durrani had never had her sign a written consent form, and that the only consent forms she had signed were from Christ Hospital where the surgeries were performed.

{¶26} Pierce presented into evidence a written consent form from Christ Hospital that she had signed on January 28, 2009, the day of the first surgery. In that form, she gave Durrani and his associates permission to perform a "C-5, C-6 anterior cervical discectomy and fusion with instrumentation; C3 to C6 posterior cervical laminoplasty." On January 28, Durrani performed only the discectomy. He had planned to do the laminoplasty on the same day, but, due to a snowstorm, he felt that not enough staff was available.

{¶27} Even though Pierce reported that her pain improved immensely following the first surgery, Durrani told her she would be paralyzed if she did not have the second surgery. On January 29, 2009, Pierce signed another written consent form from Christ Hospital for the "C3 to C6 posterior cervical laminoplasty," which was the surgery performed on January 30, 2009.

{¶28} In opening argument, Pierce's counsel argued that "medical records of Dr. Durrani are going to show that he did not get his typical written consent signed by her. You are going to see an acknowledgment from Christ Hospital of that consent."

Additionally, he argued that "there is no consent of the C6 to C7. It's written on the records, C3 to C6, and he went ahead and did the C7 too." Again, in closing argument, Pierce's counsel argued that "[t]here was no consent at all for C7. * * * She had had the C6-C7 surgery from Cohen two years earlier. And [Durrani] goes and does it again, without putting on the consent."

{¶29} On the issue of informed consent, the trial court instructed the jury that "[p]laintiff claims that she did not give informed consent to Dr. Durrani" for the second surgery involving the C6-C7 vertebrae and that "the lack of informed consent proximately caused her injury." The court then discussed when written consent is "valid and effective." It stated:

> Dr. Durrani must prove by the greater weight of the evidence that the written consent sets forth in general terms the nature and purpose of the second surgery * * * and what the surgery * * * [was] expected to accomplish, together with all reasonably known risks and the names of the physicians who performed the intended second surgery.

{¶30} The court then added:

> The plaintiff claims that her written consent to the second surgery * * * is invalid. If Dr. Durrani has proven the previous requirements, then the written consent is valid unless the plaintiff proves by the greater weight of the evidence that (A) in seeking the written consent Dr. Durrani did not act in good faith, or (B) the signing of the written consent by the plaintiff was obtained by fraudulent misrepresentation.

The court then proceeded to define the elements of fraudulent misrepresentation.

{¶31} The jury returned a general verdict in favor of Pierce. In addition to its finding that Durrani had fraudulently misrepresented the need for the second surgery,

10

the jury also found that Durrani was negligent in performing that surgery. Its stated reasons were: (1) "[n]o other less-aggressive options considered," (2) "[i]nsufficient time between surgeries to evaluate results of 1st surgery," and (3) "scare tactic used to advance idea of quick surgery."

{¶32} The jury awarded noneconomic damages in the following percentages: (1) 40 percent for negligence in the performance of the second surgery, (2) 0 percent for the lack of informed consent in performing the second surgery, (3) 40 percent for the fraudulent misrepresentation for the necessity for the second surgery, and (4) 20 percent for an issue unrelated to this appeal.

{¶33} Our review of the record shows that the two interrogatories can be harmonized and are consistent with the general verdict. The elements of an informed-consent claim are: (1) the physician failed to disclose to the patient material risks and dangers inherent in the proposed procedure, (2) the undisclosed risks and dangers in fact occurred and proximately caused the patient's injuries, and (3) a reasonable person would have declined the procedure if the risks and dangers had been disclosed. *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 477 N.E.2d 1145 (1985), syllabus; *Joiner v. Simon*, 1st Dist. Hamilton No. C-050718, 2007-Ohio-425, ¶ 42. Informed consent may be given orally. *Joiner* at ¶ 30. The jury could have rejected Pierce's technical arguments about whether the written consent forms were "valid and effective" and determined that she was adequately informed about the risks and dangers of the second surgery, including the benefits of the procedure, potential problems that might occur during recuperation, the side effects of the procedure, and the likelihood of achieving satisfactory results.

{¶34} In contrast, the elements of fraud are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, or with such utter disregard and recklessness as to whether it is

true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, and (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by reliance. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus; *Wiley v. Good Samaritan Hosp.*, 1st Dist. Hamilton Nos. C-030131 and C-030181, 2004-Ohio-763, ¶ 9.

{¶35} The record shows that the jury found that Durrani had lied about the necessity of the second surgery with the intent of misleading Pierce, that she justifiably relied on his representation, and that her injuries were proximately caused by his representation. Those findings are not inconsistent with its finding that despite her claim that she was never informed of or gave consent in writing to the second surgery, she was informed of the benefits and risks of that surgery.

{¶36} Durrani relies upon *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987), and its progeny in which courts have discussed the issue of whether a fraud claim is a "medical claim" independent of a malpractice claim for purposes of determining whether a statute of limitations has run. The court in *Gaines* held that while an action in fraud may give rise to a cause of action independent from an action in medical malpractice, it is only separate where the decision to misstate the facts is not "medical in nature." *Id.* at 56. *See Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711.

{¶37} We find these cases to be distinguishable. They interpret the definition of a "medical claim" in R.C. 2305.113, which deals with the statute of limitations for malpractice actions. It is part of R.C. Chapter 2305, which is entitled "Jurisdiction; Limitation of Actions." That a fraud claim is a medical claim for statute-of-limitations purposes, which has its own policy considerations, does not mean it is a medical claim

for all purposes. Fraud and lack of informed consent are still two separate causes of action with separate elements that are not dependent on each other, and they can coexist in a jury verdict in favor of a plaintiff.

{¶38} We hold that jury interrogatories two and five are not contradictory to each other or inconsistent with the general verdict. Therefore, the trial court did not err in overruling Durrani's motion for JNOV on that basis.

## VI. Lost Wages

{¶39} Finally, Durrani contends that the trial court should have granted his motion for JNOV on the issue of Pierce's lost wages. He argues that Pierce did not present any evidence to support the jury's finding that she had lost wages of $40,000.

{¶40} Generally, a party must show damages with reasonable certainty and cannot leave them to conjecture or speculation. *Blair*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, at ¶ 34. Pierce testified that prior to her surgeries in 2009, she had worked full time. She testified that she did not work from January 2009 to January 2010, at which time she went back to work part time. She was only able to work on and off due to her back pain. She took a leave of absence in October 2012, at which time she earned $19.18 per hour, and she had not returned to work as of the time of trial in January 2014.

{¶41} The jury awarded damages for lost wages for a period of one year. An award of $19.18 an hour for one year equals approximately $40,000. Thus, Pierce presented evidence to show damages with reasonable certainty. Competent, credible evidence supported the jury's award on lost wages, and therefore, the trial court did not err in overruling Durrani's motion for JNOV on that issue. *See Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000); *Bleh*, 142 Ohio App.3d at 439-440, 756 N.E.2d 121. Consequently, we overrule Durrani's second assignment of error.

### VII. Summary

{¶42}   In sum, we hold that the trial court did not err in overruling Durrani's post-trial motions for JNOV and for a new trial.  We overrule both of his assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**FISCHER, P.J.,** concurs.
**DEWINE, J.,** concurs separately.

**DEWINE, J.,** concurring separately.

{¶43}   I agree with the judgment, and with the lead opinion's analysis in parts II, III, IV and VI of the opinion.  I write separately to make clear my rationale for concluding that the trial court did not abuse its discretion in concluding that Dr. Durrani was not entitled to a new trial or judgment notwithstanding the verdict because of inconsistencies between the general verdict and the juror interrogatories.

{¶44}   My concern with the majority decision is its suggestion that a finding of informed consent is legally consistent with a finding of fraudulent inducement in the context presented by this case.  In order to have informed consent, one must understand the risks of the procedure.  *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 477 N.E.2d 1145 (1985), syllabus.  Informed consent also requires a determination that a reasonable person would have chosen to go ahead with the procedure. *Id.* at 139. Thus, encompassed within an understanding of the risks is necessarily an understanding of the potential benefits of the procedure.   A finding that someone has been fraudulently induced to have surgery necessarily means that the person has not been accurately informed of the risks and benefits of the procedure.  Logically, the jury's finding that Pierce had given informed consent to the second surgery is hard to square with its finding that she was fraudulently induced to undergo the surgery.

14

**{¶45}** Note though, the apparent conflict in this case is not actually between the general verdict and the interrogatories. The jury returned a general verdict for the plaintiff. None of the interrogatory answers was inconsistent with this general verdict. The jury only needed to find one basis for liability to support the general verdict. Here, the jury indicated in its interrogatory answers that Dr. Durrani was negligent in the performance of the surgery, and that he fraudulently induced Pierce to consent to the surgery. The jury further found that Dr. Durrani's negligence and fraudulent inducement proximately caused Pierce's injury. The findings as to negligence and fraudulent inducement were independently sufficient to support the general verdict. Thus, there was no real conflict between the general verdict and the interrogatory answers.

**{¶46}** The defendants rely upon Civ.R. 49(B)'s instruction that "[w]hen one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial." But it is not clear that this portion of Civ.R. 49(B) is implicated. As explained above, while the interrogatory answers on their face could be said to conflict with each other, no one answer is in direct conflict with the general verdict. Even if Civ.R. 49(B)'s procedures for answers that are inconsistent with the general verdict do not apply, there is little question in my mind that a trial court retains the discretionary power to order a new trial when interrogatory answers are internally inconsistent in such a manner that it is impossible to ascertain the jury's intent. But that is not the situation here. A careful reading of the interrogatory answers in conjunction with the general verdict and the jury instructions makes evident what the jury meant to do.

15

{¶47} In order to overturn a verdict, "the court must find the general verdict and interrogatory answers both in conflict and irreconcilable." *Sowards v. Norbar, Inc.*, 78 Ohio App.3d 545, 553, 605 N.E.2d 468 (10th Dist.1992). *See Hogan v. Finch*, 8 Ohio St.2d 31, 221 N.E.2d 633 (1966), paragraph two of the syllabus; *Otte v. Dayton Power & Light Co.*, 37 Ohio St.3d 33, 523 N.E.2d 835 (1988). In the context of the federal rule, it has been held that even though the interrogatory answers may appear inconsistent on their face, "it is not inconsistent if it can be explained by assuming the jury reasonably misunderstood the instructions." *Willard v. The John Hayward*, 577 F.2d 1009 (5th Cir.1978).

{¶48} We have been instructed to harmonize inconsistent interrogatory answers as much as reasonably possible. *See Phillips v. Dayton Power & Light Co.*, 111 Ohio App.3d 433, 443, 675 N.E.2d 565 (2d Dist.1996). The United States Supreme Court tells us that trial courts "must attempt to reconcile the jury's findings, by exegesis if necessary" before disregarding a jury's verdict and ordering a new trial. *Gallick v. B & O RR.*, 372 U.S. 108, 118, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).

{¶49} In this case, exegesis is not necessary. A review of the interrogatories makes perfectly clear the jury's intent. The jury concluded that Dr. Durrani induced Pierce to undergo an unnecessary surgery and that he should held liable as a result. The first jury interrogatory stated that Dr. Durrani was negligent in performing the surgery, and the second detailed the manner in which the jury believed he was negligent:

- No other less-agressive [sic] options considered
- Insufficient time between surgeries to evaluate results of 1st surgery
- Scare tactic used to advance idea of quick surgery

The jury further found that Dr. Durrani had fraudulently misrepresented the necessity of the second surgery, and that the fraudulent misrepresentation and the negligence were the proximate cause of injury to Pierce. As a result, the jury found in favor of Pierce and awarded damages of $540,000.

{¶50} The jury's failure to find a lack of informed consent must have been a result of its failure to completely understand the instructions on the issue. It is understandable how the jurors got confused. The judge's instructions informed the jury that the written consent form was invalid if the jury determined that it was obtained through the fraudulent misrepresentation of material facts. The judge further explained that if the jurors found the written consent form invalid, in order to have informed consent, they must determine (1) that Dr. Durrani failed to disclose "the material risks and dangers" of the second surgery, (2) that these risks and dangers were a proximate cause of the injury and (3) that a reasonable person would have decided against the surgery if a complete disclosure had been made. The difficulty is that the instructions made no explicit mention of the need to inform the patient of the expected benefits of the surgery. Obviously, one cannot give informed consent to a surgery that has no reasonably expected medical benefit unless she is made aware of that fact. Presumably, a doctor's explanation of "the risks and dangers" would have to include a detailing of the expected benefits of the surgery in order to allow for an informed choice. Nonetheless, on this record, it is easy to see how the jury could have focused only on the narrow question of whether Dr. Durrani explained the risks of the surgery to the patient without looking to the broader question of whether the patient was given sufficient information to decide if the risks of the surgery were worth the potential benefits. But even though the jury may have

been confused on this point, there is no basis to throw out the verdict. It is abundantly clear that the general verdict comports with the jury's intent.

{¶51} This is not a situation where the jury's interrogatory answers are "in conflict and irreconcilable." As a consequence, the trial court did not abuse its discretion in denying the motion for a judgment notwithstanding the verdict or a new trial.

Please note:
    The court has recorded its own entry this date.