[Cite as *Nichols v. Durrani*, 2023-Ohio-3177.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TERESA NICHOLS, | : | APPEAL NO. C-220350 |
| and | : | TRIAL NO. A-1601569 |
| BRAD NICHOLS, | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| Defendants-Appellants. | : | |

Civil Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal: September 8, 2023

*Robert A Winter Jr., James F. Maus, The Deters Law Firm, P.S.C., Benjamin M. Maraan II, Statman Harris & Eyrich, LLC*, and *Alan J. Statman,* for Plaintiffs-Appellees,

*Taft Stettinius & Hollister LLP, Aaron M. Herzig, Russell S. Sayre, Philip D. Williamson, Anna M. Greve* and *Jada M. Colon*, for Defendants-Appellants.

**KINSLEY, Judge.**

{¶1}     Defendants-appellants Abubakar Atiq Durrani, M.D., and the Center for Advanced Spine Technologies, Inc., ("CAST") appeal from the trial court's judgment awarding plaintiff-appellee Teresa Nichols compensatory and punitive damages on her claims for negligence, battery, failure to obtain informed consent, and fraudulent misrepresentation, as well as prejudgment interest.  The trial court also awarded plaintiff-appellee Brad Nichols[1] compensatory damages for his loss of consortium claim.

{¶2}     Durrani and CAST (collectively referred to as "defendants") assert three assignments of error.  In their first assignment of error, defendants assert the trial court erred in denying their motions for judgment notwithstanding the verdict, a new trial, and a setoff.  In their second assignment of error, defendants assert the trial court erred in granting the Nicholses' motion for prejudgment interest and attorney fees.  And in their third assignment of error, defendants assert they are entitled to a setoff against the Nicholses' settlement with West Chester Hospital.

{¶3}     Following our review of the record, we hold that the trial court erred in admitting evidence of Durrani's license revocations, suspension of his privileges with various hospitals and insurers, and other lawsuits against Durrani.  Because these errors were prejudicial and impacted the outcome of the trial, we further hold that the trial court erred in denying defendants' motion for a new trial on these grounds.

---

[1] We refer to Brad Nichols as Brad throughout this opinion, as he and Nichols have the same surname.  And we refer to Teresa and Brad Nichols collectively as "the Nicholses."

### *I.      Factual and Procedural Background*

**{¶4}**    Nichols suffered from chronic back pain due to injuries sustained from a car accident in 1992.  This was exacerbated by a dancing injury she sustained in 2009.  Because she found no relief from conservative treatment, she was referred by Dr. Tammy Musolino to Durrani for consultation and treatment.

**{¶5}**    On September 16, 2010, Durrani wrote to Dr. Musolino that after conducting an MRI and x-rays on Nichols, he diagnosed her with Scheuermann's kyphosis, disc degeneration in the thoracic spine, and thoracic disc herniation causing spinal cord compression.  Durrani recommended surgery as treatment.  On December 17, 2010, Durrani performed a thoracoscopic anterior discectomy with anterior interbody fusions from T5-T6 to T11-12, posterior spinal instrumentation from T3 to L2, and a posterior spinal fusion using auto and allograft from T3-L2.

**{¶6}**    After this surgery, Durrani recommended physical therapy and epidural steroid injections for Nichols.  Because this conservative treatment only provided short term relief for Nichols, Durrani conducted an MRI of her lumbar spine, which he believed showed lumbar disc herniation at L4-L5 with foraminal stenosis at the L4-L5 level.  On June 13, 2012, Durrani performed a second surgery, a fusion at L3-L4 through L4-L5, on Nichols.

**{¶7}**    On March 16, 2016, the Nicholses sued defendants as well as West Chester Hospital and UC Health.  The Nicholses settled with West Chester Hospital and UC Health and dismissed those claims with prejudice.  The claims against defendants proceeded to a jury trial in July 2019.

**{¶8}**    At trial, the Nicholses testified as to Nichols's pain levels and physical capacity before and after the surgeries performed by Durrani.  Brad also testified that

due to a stroke that Nichols suffered in 2016, she struggled with her memory. Consequently, Nichols's testimony at trial was contradictory and jumbled at times. But Nichols affirmatively testified that her back pain improved after each surgery by Durrani. Nichols also testified as to the consent forms that she signed prior to the surgeries and what she understood about her condition and the surgeries that were to be performed.

{¶9} Brad testified that Nichols's condition deteriorated after her surgeries. He testified that after Nichols's surgeries, her pain persisted, she was no longer able to work, she appeared depressed, she was involuntarily committed for suicidal ideation, and their intimate relations deteriorated. He further testified that Durrani was often hasty in discussing Nichols's condition with them.

{¶10} The parties also presented competing expert testimony as to whether Durrani deviated from the standard of care by exaggerating the findings in Nichols's medical images and by performing unnecessary surgeries. The Nicholses' expert witnesses testified that Durrani exaggerated or misrepresented his findings to justify surgery. Conversely, defendants' expert witnesses testified that Durrani performed both surgeries in accordance with the standard of care.

{¶11} The Nicholses also played a recording of a collage of testimony from Durrani.[2] The collage did not contain any questions regarding the surgery performed on Nichols, but rather contained questions on a multitude of topics, including the education Durrani received in Pakistan and his family ties to that country, prior lawsuits filed against Durrani, the revocation of his medical licenses and suspension of his privileges to practice medicine, whether various statements on his resume and

---

[2] We described the content and creation of the collage in greater detail in *Hounchell v. Durrani*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, ¶ 18.

on his applications for a medical license were truthful, his experience in serving as a physician to the royal family in Saudia Arabia, and past criminal charges against him. Defendants raised an objection to the collage as unfairly prejudicial and irrelevant, which the trial court overruled.

{¶12} The jury returned verdicts in favor of the Nicholses on all of their claims. It awarded Teresa Nichols $6,755,000 in compensatory damages and $17,510,000 in punitive damages on her claims for negligence, battery, failure to obtain informed consent, and fraudulent misrepresentation. It also awarded Brad $2,000,000 in compensatory damages for his loss of consortium claim.

{¶13} After the jury issued its verdict, defendants filed motions for judgment notwithstanding the verdict or a new trial and a set-off, which were overruled. The Nicholses moved for prejudgment interest and attorney fees. This motion was initially withdrawn, but later granted by the trial court.

{¶14} The trial court issued a final judgment and reduced the Nicholses' damages. It reduced Nicholses' damages to $3,910,000 in compensatory damages, $350,000 in punitive damages, and $340,759.86 in prejudgment interest. And it reduced Brad's compensatory damages to $500,000.

## II.     *Motion for Judgment Notwithstanding the Verdict and a New Trial*

{¶15} In their first assignment of error, defendants argue that the trial court erred in denying their motion for judgment notwithstanding the verdict and a new trial. In this assignment of error, they challenge the trial court's admission of evidence regarding Durrani's license revocations and suspension of medical privileges, admission of evidence of other lawsuits against Durrani, and the allowance of references by the Nicholses' counsel to Durrani's absence from trial. Defendants also

argue the Nicholses' closing argument included unfairly prejudicial statements. Defendants assert the cumulative effect of these errors warranted judgment notwithstanding the verdict or a new trial. Defendants additionally argue that the jury's award of future damages was not supported by the weight of the evidence.

### A. Standard of Review

**{¶16}** We explained the standards of review as to motions for judgment notwithstanding the verdict and for a new trial in *Hounchell*:

> Civ.R. 50 governs motions for judgment notwithstanding the verdict. We review the trial court's ruling on such a motion de novo and must construe the evidence in the light most favorable to the nonmoving party and only grant the motion if reasonable minds could come to but one conclusion which is in favor of the moving party.

> A motion for a new trial is governed by Civ.R. 59. A court may grant a motion for a new trial for, among other things, an irregularity in the proceedings of the court, if the judgment is not sustained by the weight of the evidence, or any reason for good cause shown. We review a trial court's ruling on a motion for a new trial for an abuse of discretion, and we must construe the evidence in favor of the trial court's ruling, rather than in favor of the original jury's verdict.

(Internal quotation marks and citations omitted.) *Hounchell v. Durrani*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, ¶ 30-31.

### B. Evidentiary Errors

{¶17} To begin, we consider defendants' arguments that the trial court erred in denying their motion for a new trial based on the trial court's admission of evidence concerning Durrani's license revocations and privileges suspensions, other lawsuits against Durrani, and Durrani's absence at trial. Defendants argue that evidence concerning Durrani's license revocations and other lawsuits against Durrani should have been excluded under both Evid.R. 403(A) and 404(B). And defendants argue that references to Durrani's absence were irrelevant and inflammatory.

{¶18} "Evid.R. 403(A) provides that evidence, even if relevant, is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 33. "Evid.R. 404(B), in turn, provides that evidence of other crimes, wrongs, or acts is inadmissible when used to prove a person's character and show action in conformity therewith." *Id.* "A trial court has broad discretion regarding the admission of evidence, and, absent an abuse of discretion and proof of material prejudice, we will not reverse a trial court's ruling on an evidentiary issue." *Id.* at ¶ 34.

### 1. License Revocations

{¶19} Defendants challenge the trial court's admission of evidence concerning the revocation of Durrani's medical licenses in Ohio and Kentucky and the suspension of his medical privileges with various hospitals and insurers. This evidence was admitted on cross-examination of Dr. Myron Marx, an expert witness for defendants, and in the collage. The Nicholses' counsel also made reference to Durrani's medical license revocations and privileges suspensions during opening statements and closing arguments.

{¶20} During opening statements, counsel for the Nicholses stated, "Eventually you're going to hear Dr. Durrani's license was revoked in Ohio permanently." And during closing arguments, counsel for the Nicholses again reiterated, "The judge is going to tell you, or already did, that his medical licenses both in Kentucky and Ohio were revoked." On cross-examination of Dr. Marx, counsel for the Nichols asked, "you're also aware that Dr. Durrani had both his Ohio and Kentucky medical licenses revoked; correct?" But defendants did not object to any of these statements. And because none of these statements were objected to, any potential error was waived. *See Hounchell*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, at ¶ 63.

{¶21} But defendants did object to the admission of the collage. The collage contained the following questions concerning Durrani's license revocations, as well as the suspension of his privileges to practice medicine:

Isn't it true that on March 12, 2014, your medical licenses was [sic] permanently revoked by the State of Ohio?

Isn't it true in April 2014 your Kentucky medical license was revoked?

Isn't it true that at Children's Hospital you've had your privileges suspended for not getting your operative reports dictated timely?

And did you have your privileges suspended from time to time at West Chester UC Health also, correct?

And isn't it true that you had your privileges suspended at Journey Lite?

And isn't it true that before you left the United States Medicare suspended you as a medical provider?

Isn't it true that before you left the United States Anthem suspended you as a medical provider?

**{¶22}** Despite the defendants' objections, the trial court admitted the collage in the interest of consistency with its prior ruling in another lawsuit against Durrani.

**{¶23}** On appeal, defendants argue this evidence was far more unfairly prejudicial than probative. Further, defendants emphasize that in *Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159 (1st Dist.), this court determined that it was an abuse of discretion to allow evidence of Durrani's license revocations in violation of Evid.R. 403(A) and 404(B). The Nicholses counter that this evidence was relevant because Durrani's credibility was at issue; he was portrayed as an upstanding and honest medical professional, and the Nicholses argue they relied upon the collage to attack his veracity. They claim they could do so under Evid.R. 608.

**{¶24}** This court recently considered a similar challenge to the trial court's admission of these statements via the collage in *Hounchell*. There, we held that the license revocations and privileges suspensions did not relate to Hounchell's treatment or the theory of the Hounchells' case and that the Hounchells failed to provide any context as to these license revocations and privileges suspensions. *Hounchell*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, at ¶ 43-44. Accordingly, we concluded that this evidence contained very little probative value in the Evid.R. 403(A) weighing equation. *Id.* at ¶ 44. Further, in reliance on *Setters*, we held that the prejudice resulting from the admission of the suspension and revocation evidence outweighed the scant probative value it offered the jury. *Id.* at ¶ 45. We were also unpersuaded by the Hounchells' Evid.R. 608 argument and concluded that this "evidence was not introduced to show that Durrani misrepresented or was otherwise deceptive about the

9

revocations and suspensions, but rather simply to show the fact that those decisions occurred." *Id.* at ¶ 47.

**{¶25}** Just as in *Hounchell*, Durrani's license revocations and privileges suspensions did not relate to Nichols's treatment or the theory of the Nicholses' case. The Nicholses similarly provided no context as to these license revocations and privileges suspensions. And we are again unpersuaded by the argument that this evidence was introduced to show any misrepresentation or deception by Durrani. Accordingly, on the authority of *Hounchell*, we hold that the trial court abused its discretion here in admitting evidence of Durrani's license revocations and privileges suspensions. *Id.* at ¶ 49. Because we reach this conclusion under Evid.R. 403(A), we need not consider defendants' arguments as to Evid.R. 404(B).

### 2. *Other Lawsuits Filed Against Durrani*

**{¶26}** Defendants also argue the trial court erred in admitting evidence of other lawsuits filed against Durrani. The challenged evidence was contained in the collage and included the following questions:

> And you were a party to a criminal complaint in Mason Municipal Court in Warren County for a misdemeanor first-degree assault that ultimately got dismissed; correct?
>
> And isn't it true in your application to the Kentucky and Ohio Medical Boards in 2010 you never admitted in the application you had been sued for medical malpractice?
>
> Well, the application that you signed under oath said there were no lawsuits pending. And, as a matter of fact, there were multiple suits pending, weren't there?

Well, on October 16th, 2000, Tracy Newton sued you, didn't she?

And on April 12, 2002, Casey Flume sued you; correct?

August 16, 2002, there was a suit by James Johnson?

On February 28th, 2003, you were sued by Robert Farrell?

On April 11, 2003, Robert Hughes sued you, didn't he?

And you know that all five of those suits were in Hamilton County, Cincinnati, Ohio?

Isn't it true in 2009 a law firm that represented Children's Hospital and West Chester, Dinsmore & Shohl, had done work for you and sued you for fees for work you owed them on a patent case?

You don't recall being sued by Dinsmore & Shohl for unpaid legal fees?

**{¶27}** Like in *Hounchell*, none of this evidence was related in any way to the surgery performed on Nichols. *Hounchell*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, at ¶ 51. Further, like in *Hounchell*, no evidence was introduced about the nature of these lawsuits. *Id.* Finally, the evidence regarding the dismissed misdemeanor assault charge was as troubling here as it was in *Hounchell*. *Id.*

**{¶28}** Therefore, on the authority of *Hounchell*, we hold that the trial court abused its discretion here in admitting evidence of other lawsuits against Durrani. *See id.* at ¶ 60.

### 3. *Durrani's Absence*

**{¶29}** Defendants also contend the trial court erred in permitting the Nicholses' counsel to make comments and ask questions concerning Durrani's absence from trial. Defendants assert that these comments and questions were irrelevant and only meant to inflame racial animus and bias towards Durrani.

**{¶30}** But most of these comments and questions by the Nicholses' counsel were not objected to by defendants. Defendants did not object to the Nicholses' counsel referencing Durrani's absence during opening statements or closing and proximate cause arguments. Because no objection was raised in response to these comments, any potential error was waived. *See id.* at ¶ 63.

**{¶31}** Defendants did object to the collage, which included a question to Durrani concerning the date he left the United States to return to Pakistan. Like in *Hounchell*, there is nothing to suggest that this question was asked "to insinuate that Durrani had left the United States for a nefarious purpose." *Hounchell*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, at ¶ 64. As we noted in *Hounchell*, "[w]e have previously rejected the argument that comments limited to the fact of Durrani's absence and its impact on the legal proceedings constitute error and do so again now." *Id.*, citing *Pierce v. Durrani*, 2015-Ohio-2835, 35 N.E.3d 594, ¶ 19 (1st Dist.).

### 4. Closing Argument

**{¶32}** Defendants next challenge certain statements made by the Nicholses' counsel during closing argument. Specifically, defendants argue the Nicholses' statement that Durrani "should be held to an even higher standard of care than the ordinary surgeon because he's so well-trained" was a misstatement of the standard of care for medical negligence. Next, defendants argue the Nicholses' counsel inappropriately used the golden rule argument and invited the jury to step into Nichols's shoes by stating, "Can you imagine? Could you imagine being in her body, having gone through what she's gone through?"

**{¶33}** Defendants also take issue with the Nicholses' counsel vouching for the credibility of their expert witness, Dr. Bloomfield, by stating, "I don't know how you

get more credible than Dr. Bloomfield. Somebody once said to me that Dr. Bloomfield is like Father Time from New York. How do you argue with that credibility." And lastly, defendants assert the Nicholses' counsel made the following improper remarks regarding defendants' experts:

> And you tell me? How credible was Dr. Biscup? My god, he's a doctor that will only perform for cash, and he does it by going to have [sic] seminars at hotels and libraries, bring your MRI for a free reading.
>
> Well, I'm about to go to that doctor as quickly as I'm going to go to the one that said, with this coupon, get a free urinalysis. Give me a break. He's a circus barker.
>
> He's a drifter. He drifts around to different hotels and different states roping people into cash deal for back surgery. And you heard what he said. His ads say, imagine your life without pain.
>
> * * *
>
> Start to ask yourselves these questions. What are these doctors calling themselves world renown, and we've got coincidentally in one courtroom in front of one jury with one set of lawyers and one surgery, we somehow got two doctors to the royal family in the Middle East: One in Saudi Arabia and one in the United Arab Emirates.
>
> Really? You believe this stuff? It's craziness. Just like this completely made up craziness.

**{¶34}** "[T]o support a reversal of a judgment on the ground of misconduct of counsel in his opening statement and closing statement to the jury, it is necessary that a proper and timely objection be made to the claimed improper remarks so that the

court may take proper action thereon." *Gable v. Village of Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 40. "Otherwise, a party waives all but plain error." *Bowden v. Annenberg*, 1st Dist. Hamilton No. C-040499, 2005-Ohio-6515, ¶ 31.

**{¶35}** A jury verdict in a civil action based on the assertion of plain error will not be reversed where no timely objection is made except in the "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Gable* at ¶ 43.

**{¶36}** Here, as noted above, defendants did not object to these comments at trial and therefore any potential error was waived. *See Hounchell*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, at ¶ 63. And even if we were to consider these comments under plain error review, they do not rise to the level of an "extremely rare case involving exceptional circumstances." *See Gable* at ¶ 43. We do, however, acknowledge that these comments were particularly egregious and came very close to the line. Though they do not constitute plain error, we highlight their impropriety.

### 5. Harmless Error Analysis

**{¶37}** Having determined that the trial court erred in admitting evidence of Durrani's license revocations, privileges suspensions, and evidence concerning other lawsuits filed against Durrani, we next consider the impact of these errors on the trial. In *Hounchell*, we explained the harmless error analysis:

> An improper evidentiary ruling constitutes reversible error only when
> the error affects the substantial rights of the adverse party or the ruling

is inconsistent with substantial justice. In considering whether a party's substantial rights were affected, we must consider whether the trier of fact would have reached the same conclusion had the errors not occurred.

(Internal quotation marks and citations omitted.) *Hounchell*, 1st Dist. Hamilton No. C-220021, 2023-Ohio-2501, at ¶ 71.

{¶38} Like in *Hounchell*, after consideration of all other evidence presented in this case, we cannot find that the error resulting from these evidentiary rulings was harmless. *See id.* at ¶ 73. Despite certain inconsistencies in Nichols's testimony regarding the dates of her injuries and treatment, she repeatedly testified that she felt better after each surgery Durrani performed. And on cross-examination, Brad testified that Nichols stopped working just prior to the first surgery, which contradicts the Nicholses' position that these surgeries affected Nichols's ability to work. Brad also testified on cross-examination that Nichols reported significant relief from her back pain after both surgeries. Further, Brad testified on cross-examination that another physician opined that Nichols was doing too much activity after both surgeries. The Nicholses' testimony calls into question their theory of the case that Nichols's pain did not improve after surgery and her quality of life of declined.

{¶39} Additionally, like in *Hounchell*, "the record contains competing expert testimony as to whether Durrani exaggerated the findings on [Nichols's] medical images and recommended an unnecessary surgery." *Id.* And this makes it all the more likely that the jury would have considered Durrani's license revocations and privilege suspensions when rendering its verdicts. *See id.*, citing *Setters*, 2020-Ohio-6859, 164 N.E.3d 1159, at ¶ 21. Accordingly, on the authority of *Hounchell*, we hold that the

15

improper evidentiary rulings concerning the license revocations, privileges suspensions, and other lawsuits against Durrani directly impacted the jury's assessment of his credibility. *Id.* And we therefore cannot conclude that the outcome of the trial would have been the same but for these errors. *Id.*

{¶40} Thus, we hold that the trial court abused its discretion in failing to grant defendants' motion for a new trial on the basis of these errors. Defendants' first assignment of error is accordingly sustained. Our ruling on these issues renders moot both the defendants' remaining arguments under the first assignment of error and the remaining assignments of error.

### *Conclusion*

{¶41} For the reasons set forth in this opinion, the trial court's judgment denying defendants' motion for a new trial is reversed. This cause is remanded for proceedings consistent with the law and this opinion.

*Judgment reversed and cause remanded.*

**CROUSE, P.J.,** and **BERGERON, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.