[Cite as *Puckett-Morrissette v. Durrani*, 2026-Ohio-1444.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| SHERRI PUCKETT-MORRISSETTE, | : | APPEAL NO. | C-250067 |
| | | TRIAL NO. | A-1601536 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | | |
| and | : | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | | |
| | : | | |
| Defendants-Appellants, | : | | |
| and | : | | |
| WEST CHESTER HOSPITAL, LLC, | : | | |
| and | : | | |
| UC HEALTH, | : | | |
| Defendants. | : | | |
| | : | | |


| | | | |
|---|---|---|---|
| DERRILL REYNOLDS, | : | APPEAL NO. | C-250069 |
| | | TRIAL NO. | A-1706444 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | | |
| and | : | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | | |
| | : | | |

# OHIO FIRST DISTRICT COURT OF APPEALS

Defendants-Appellants,                    :

  and                                        :

WEST CHESTER HOSPITAL, LLC,                :

  and                                        :

UC HEALTH,                                 :

    Defendants.                            :

---

CHERYL WYATT,                              :        APPEAL NO.   C-250276
                                                    TRIAL NO.    A-1505970
  and                                        :

CHARLES WYATT,                             :

    Plaintiffs-Appellees,                  :        *JUDGMENT ENTRY*

  vs.                                        :

ABUBAKAR ATIQ DURRANI, M.D.,               :

  and                                        :

CENTER FOR ADVANCED SPINE                  :
TECHNOLOGIES, INC.,
                                           :
    Defendants-Appellants,

  and                                        :

                                           :
JOURNEY LITE OF CINCINNATI, LLC,
                                           :
    Defendant.

                                           :

This cause was heard upon the appeals, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed in part, reversed in part, and vacated in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs be taxed 50% to Appellants and 50% to Appellees.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 4/22/2026 per order of the court.**

**By:**_____

  **Administrative Judge**

[Cite as *Puckett-Morrissette v. Durrani*, 2026-Ohio-1444.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| SHERRI PUCKETT-MORRISSETTE, | : | APPEAL NO. | C-250067 |
| Plaintiff-Appellee, | : | TRIAL NO. | A-1601536 |
| vs. | : | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | | |
| and | : | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | | |
| Defendants-Appellants, | : | | |
| and | : | | |
| WEST CHESTER HOSPITAL, LLC, | : | | |
| and | : | | |
| UC HEALTH, | : | | |
| Defendants. | : | | |
| | : | | |

| | | | |
|---|---|---|---|
| DERRILL REYNOLDS, | : | APPEAL NO. | C-250069 |
| Plaintiff-Appellee, | : | TRIAL NO. | A-1706444 |
| vs. | : | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | | |
| and | : | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | | |
| Defendants-Appellants, | : | | |
| | : | | |

# OHIO FIRST DISTRICT COURT OF APPEALS

| | | | |
|---|---|---|---|
| and | : | | |
| WEST CHESTER HOSPITAL, LLC, | : | | |
| and | : | | |
| UC HEALTH, | : | | |
| Defendants. | : | | |

| | | | |
|---|---|---|---|
| CHERYL WYATT, | : | APPEAL NO. | C-250276 |
| | | TRIAL NO. | A-1505970 |
| and | : | | |
| CHARLES WYATT, | : | | |
| Plaintiffs-Appellees, | : | *OPINION* | |
| vs. | : | | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | | |
| and | : | | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | | |
| | : | | |
| Defendants-Appellants, | : | | |
| and | : | | |
| JOURNEY LITE OF CINCINNATI, LLC, | : | | |
| | : | | |
| Defendant. | : | | |
| | : | | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal: April 22, 2026

*Statman Harris, LLC*, and *Alan J. Statman*, for Plaintiffs-Appellees Sherri Puckett-Morrissette, Derrill Reynolds, Cheryl Wyatt, and Charles Wyatt,

*Taft Stettinius & Hollister LLP, Philip D. Williamson, Aaron M. Herzig, Russell S. Sayre,* and *Elise L. Marrinan* for Defendants-Appellants Abubakar Atiq Durrani, M.D., and Center for Advanced Spine Technologies, Inc.

**NESTOR, Judge.**

{¶1} In these consolidated appeals, defendants-appellants Abubakar Atiq Durrani, M.D., and the Center for Advanced Spine Technologies, Inc., ("CAST") (collectively referred to as "Durrani") appeal the judgments of the Hamilton County Court of Common Pleas finding Durrani liable to plaintiffs-appellees Sherri Puckett-Morrissette, Derrill Reynolds, and Cheryl Wyatt (collectively, "plaintiffs"). The trial court awarded damages to plaintiffs after a joint jury trial. For the following reasons, only Durrani's arguments regarding setoff and future medical expenses are meritorious. Therefore, the trial court's judgments are affirmed in part, reversed in part, vacated in part, and the cause is remanded.

## I. Factual and Procedural History

{¶2} Plaintiffs sued Durrani after Dr. Durrani performed back surgeries on them, which plaintiffs alleged were unnecessary.

{¶3} Before seeing Dr. Durrani, Reynolds underwent prior back surgeries. Specifically, he had a fusion at the L4-L5 level and an anterior cervical decompression at C6-C7. Reynolds testified that he initially went to see Dr. Durrani for lower back pain, but Dr. Durrani elected to operate on his neck first. At the L4-L5 level, Dr. Durrani diagnosed Reynolds with lumbar spinal stenosis, spondylosis, disc herniation, and foraminal stenosis. Dr. Durrani also noted a failed fusion at C6-C7 and arthritis and radiculopathy at C5-C6. Dr. Durrani performed a revision surgery at C6-C7 and a fusion at C5-C6. At a later date, Dr. Durrani also performed a revision on L4-L5.

{¶4} Wyatt also had a previous surgery on C6-C7 before seeing Dr. Durrani. She also initially went to see Dr. Durrani for lower back pain. Dr. Durrani treated this pain with epidural injections. Then, Wyatt began experiencing neck pain. Dr. Durrani diagnosed her with herniated discs and stenosis at the C3-C4 and C4-C5 levels. Dr.

Durrani performed an anterior cervical discectomy and fusion on C4-C5 and C5-C6. Wyatt testified that she believed she was only having surgery on one level of her spine, but Dr. Durrani performed surgery on two levels.

{¶5} Puckett-Morrissette did not have any prior back surgeries before seeing Dr. Durrani. However, she did have other medical issues, such as Ehlers-Danlos syndrome, which is a connective tissue disorder that causes joint hypermobility. She went to see Dr. Durrani for neck pain. Dr. Durrani's clinical impression was that Puckett-Morrissette was experiencing instability at C1-C2, caused by the Ehlers-Danlos syndrome. Dr. Durrani performed a fusion surgery at C1-C2, placing two screws in her neck.

{¶6} After a consolidated jury trial, the jury found in favor of plaintiffs on their claims for negligence, lack of informed consent, battery, and fraud. The jury also found in favor of Wyatt's spouse, Charles Wyatt, on his loss of consortium claim. Plaintiffs moved for prejudgment interest, which the trial court granted. Durrani moved for judgment notwithstanding the verdict ("JNOV"), or in the alternative, for a new trial. Durrani also moved for a setoff. The trial court denied Durrani's motions, but applied statutory damages caps to reduce each plaintiff's punitive damages and noneconomic damages awards.

{¶7} This appeal followed.[1]

## II. Analysis

{¶8} Durrani raises four assignments of error. First, they argue that the trial court should have ordered new trials with single plaintiffs, instead of trying Puckett-Morrissette's, Reynolds's and Wyatt's cases together. Second, Durrani argues that the

---

[1] Appellees Sherri Puckett-Morrissette and Cheryl Wyatt moved this court to dismiss their fraud claims. This court denied those motions because appellate courts cannot dismiss claims on appeal.

trial court should have granted their motions for a new trial or JNOV, based on evidentiary issues. Third, Durrani argues that the trial court should have granted their motions for a new trial or JNOV, based on damages issues. Fourth and finally, Durrani argues that the trial court should not have awarded prejudgment interest.

### A. First Assignment of Error

**{¶9}** Durrani's first assignment of error asserts that the trial court erred by not ordering new trials with single plaintiffs.

**{¶10}** In making this argument, Durrani first asks us to overrule our opinion in *Jones v. Durrani*, 2024-Ohio-1776 (1st Dist.). In *Jones*, we held that if actions involve "common questions of law or fact," the court may consolidate them for trial. *Id.* at ¶ 19, quoting Civ.R. 42(A)(1)(a). We have refused to overrule *Jones* before and similarly refuse to do so today. *See Boggs v. Durrani*, 2026-Ohio-210, ¶ 65 (1st Dist.); *Haggard v. Durrani*, 2025-Ohio-5327, ¶ 41 (1st Dist.); *Courtney v. Durrani*, 2025-Ohio-2335, ¶ 52 (1st Dist.); *Ravenscraft v. Durrani*, 2025-Ohio-2900, ¶ 91 (1st Dist.); *Fenner v. Durrani*, 2025-Ohio-4477, ¶ 54-55 (1st Dist.).

**{¶11}** Next, Durrani argues that consolidation was improper under the facts of these cases. Under this court's precedent, "where the plaintiffs received similar surgeries, presented the testimony of similar medical experts on overlapping medical conditions, and raised common claims of malpractice and fraud based on the same legal theory[,]" Civ.R. 42(A) permits joinder of claims. *Courtney* at ¶ 46, citing *Jones* at ¶ 25-26. Appellate courts will not reverse the trial court's decision to consolidate cases absent an abuse of discretion. *Boggs* at ¶ 66, citing *Ravenscraft* at ¶ 82, citing *Jones* at ¶ 20.

**{¶12}** Here, the trial court did not abuse its discretion in consolidating plaintiffs' cases for trial. Plaintiffs received similar fusion treatments on the same

9

general area of the spine. Plaintiffs presented similar expert testimony to the jury. While there are factual differences in each case, "Civ.R. 42(A) does not require identical facts." *Boggs* at ¶ 67. Therefore, the trial court did not abuse its discretion in consolidating the cases.

{¶13} Durrani also argues that they were prejudiced by the joint trial, contending that had the trials been separate, there is a strong chance the outcomes would have been different. Durrani claims that consolidation was an "end-run around Evidence Rule 403(A)" and that plaintiffs relied on each others' cases to reinforce the point that Durrani was an incapable doctor. They point to the identical punitive damages awards as an indication that the joint trial prejudiced them.

{¶14} We rejected this argument in *Courtney*, and do so again here. *Courtney*, 2025-Ohio-2335, at ¶ 58 (1st Dist.). In *Courtney*, we reasoned that "the mere fact that a defendant can articulate some degree of prejudice flowing from Civ.R. 42(A) consolidation is insufficient to undermine consolidation. Rather, a party . . . must demonstrate *unfair* prejudice." (Emphasis in original.) *Id*. at ¶ 57, citing *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001). And, because the purpose of punitive damages is "'to punish the tortfeasor and to deter similar conduct[,]'" identical punitive damages awards do not necessarily indicate unfair prejudice. *Id*. at ¶ 58, quoting *Whetstone v. Binner*, 2016-Ohio-1006, ¶ 15.

{¶15} The first assignment of error is overruled.

### B. Second Assignment of Error

{¶16} Next, Durrani points to evidentiary issues to argue that the trial court should have granted their motion for a new trial or JNOV. We review a trial court's denial of a JNOV motion de novo. *Setters v. Durrani*, 2020-Ohio-6859, ¶ 28 (1st Dist.), citing *Pierce v. Durrani*, 2015-Ohio-2835, ¶ 10 (1st Dist.), citing *Environmental*

*Network Corp. v. Goodman Weiss Miller, L.L.P.*, 2008-Ohio-3833, ¶ 23. In contrast, we review a trial court's denial of a motion for a new trial for an abuse of discretion. *Setters* at ¶ 29, citing *Pierce* at ¶ 10.

**{¶17}** In support of their argument, Durrani alleges that (1) the trial court improperly permitted Dr. Wilkey to testify, (2) Dr. Saini's testimony was improper, and (3) the trial court improperly instructed the jury on Dr. Durrani's absence.

**{¶18}** We first examine Dr. Wilkey's qualifications to testify as an expert under Evid.R. 601. This rule prohibits a medical expert from testifying in a medical-malpractice case unless the expert "devotes at least one-half of [their] professional time to the active clinical practice . . . or to its instruction . . . at either the time the negligent act is alleged to have occurred or the date the claim accrued . . . in the same or a substantially similar specialty as the defendant." Evid.R. 601(B)(5)(b-c).

**{¶19}** Durrani asserts that Dr. Wilkey devoted less than half his time to clinical work at the time of trial and thus did not qualify as an expert under Evid.R. 601. But Dr. Wilkey testified that he volunteers at Five Rivers Health Center and is employed at United Healthcare. Additionally, he testified that he is a professor of orthopedic surgery. Ultimately, the record reflects that Dr. Wilkey met the requirements of Evid.R. 601 to testify as an expert.

**{¶20}** Next, Durrani argues that Dr. Saini's testimony was improper under Evid.R. 702. *See* Evid.R. 702(B).

**{¶21}** Durrani takes issue with a few parts of Dr. Saini's testimony. Dr. Saini testified about the placement of a screw during Puckett-Morrissette's surgery. He also offered general testimony as to whether Dr. Durrani performed surgery correctly and whether the surgeries helped the patients. Finally, he testified as to informed consent in Wyatt's surgery, and what tools Dr. Durrani used in the surgery. Durrani argues

that Dr. Saini's testimony was outside of the scope of his expertise, because Dr. Saini is a radiologist, not a surgeon.

{¶22} We have previously addressed whether Dr. Saini's similar testimony exceeded the scope of his expertise. "In *Adams*, we recognized that a radiologist's duties overlap with a surgeon's because a surgeon's minimum standard of care 'includes reviewing diagnostic images before determining whether surgery is necessary.'" *Ravenscraft*, 2025-Ohio-2900, at ¶ 140 (1st Dist.), quoting *Adams v. Durrani*, 2022-Ohio-60, ¶ 55 (1st Dist.).

{¶23} Like in *Ravenscraft*, Dr. Saini's testimony here was within his expertise as a radiologist. Therefore, the trial court did not err in permitting his testimony.

{¶24} In their final argument under this assignment, Durrani asserts that the jury instruction regarding Dr. Durrani's absence was improper. We have already considered this identical instruction in *Jones*, 2024-Ohio-1776, at ¶ 30 (1st Dist.), *Ravenscraft* at ¶ 134, and *Clark v. Durrani*, 2025-Ohio-3096, ¶ 36-39 (1st Dist.). In those cases, we held that the instruction was not an abuse of discretion. We do so again today.

{¶25} The second assignment of error is overruled.

### C. Third Assignment of Error

{¶26} Durrani next challenges the trial court's denial of JNOV or a new trial based on damages issues. First, they argue that the trial court erred by not joining plaintiffs' health insurers. Second, they assert that the awards of past medical damages were against the manifest weight of the evidence. Next, Durrani argues that the trial court should not have allowed future medical damages. Finally, they argue that the trial court should have allowed a setoff against plaintiffs' settlements with other defendants.

{¶27} Durrani's first and second arguments under this assignment of error challenge the trial court's award of past medical expenses. But Durrani has waived the issue of past medical expenses for appellate review. In final judgments on post-trial motions in each case, the trial court held

> The parties informed this Court at the January 8th hearing that they have reached an agreement on the issue of past medical expenses. Accordingly, it is unnecessary for this Court to retain any amount of [the awards] for past medical expenses.

Because Durrani consented to a resolution of the issue of past medical expenses in the trial court, they can no longer challenge the issue on appeal. *See Daugherty v. Daughtery*, 2013-Ohio-1934, ¶ 10 (9th Dist.) ("Courts have recognized that a party has not preserved an issue for appeal when she has entered into a stipulation or agreement regarding the issue before the trial court.").

{¶28} In their third argument under this assignment, Durrani argues that the trial court erred by allowing future medical damages. Durrani asserts that plaintiffs offered "zero evidence" regarding what their future medical expenses might be.

{¶29} The jury awarded $750,000 in future medical damages to Reynolds, $630,000 to Puckett-Morrissette, and $480,000 to Wyatt.

{¶30} "A plaintiff's claim for future medical expenses must be supported by evidence that reasonably establishes the amount to be incurred in the future." *Potts v. Durrani*, 2023-Ohio-4195, ¶ 58 (1st Dist.), quoting *Setters*, 2020-Ohio-6859, at ¶ 40 (1st Dist.). Future medical expenses awards may not be purely speculative. *Bender v. Durrani*, 2024-Ohio-1258, ¶ 136 (1st Dist.).

{¶31} This court considered the type of evidence required to support an award of future medical expenses in *Waller v. Phipps*, 2001 Ohio App. LEXIS 4119 (1st Dist.

Sept. 14, 2001). In *Waller*, we held that absent expert projection of expected costs and testimony regarding specific future course of treatment, there is insufficient evidence to support the jury's award of future medical expenses. *Id.* at *12-13. Future medical expenses awards must be supported by expert testimony regarding the duration, frequency, kind of care, and costs that plaintiffs could expect in the future. *Id.* The expert in *Waller* did not offer this kind of testimony. *Id.* Therefore, we held that the future medical expenses award was not supported by sufficient evidence, and that the appropriate remedy was to vacate the award. *Id.* at *14.

{¶32} Here, Dr. Wilkey and Dr. Bloomfield offered some testimony as to plaintiffs' expected future medical expenses. However, that testimony was insufficient to support the jury's awards.

{¶33} Dr. Wilkey testified that Puckett-Morrissette's "pain management can be anywhere from one hundred thousand dollars plus a year to as little as just narcotic management long-term, which would be . . . $30,000 a year." He noted that $30,000 was a conservative estimate. Dr. Bloomfield testified that she would have future pain and suffering, which will require future pain management.

{¶34} Dr. Wilkey testified that Reynolds has a higher than normal chance of experiencing adjacent segment deterioration, which will require him to undergo pain management. Dr. Bloomfield testified that Reynolds might need future intervention at the C5-C6 level, and will incur expenses for pain management.

{¶35} Dr. Wilkey did not testify as to Wyatt. Dr. Bloomfield testified that she has a "chronic spine problem," which rendered her more likely than not to require future pain management, and possible more surgery on the C3-C4 level.

{¶36} Overall, while plaintiffs offered some expert testimony regarding expected future medical expenses, the testimony in each case was insufficient to

support the jury's respective awards, especially considering how high the awards were. In Puckett-Morrissette's case, while Dr. Wilkey provided an estimate as to costs, he did not specify the exact type of treatment that might be required, or how likely it was that Puckett-Morrissette would have to undergo such treatment. In Reynolds's and Wyatt's cases, no expert testified as to the projected costs of future medical expenses. We have previously upheld awards for future medical expenses in cases where experts provided sufficient evidence as to the cost, type of treatment, and likelihood that the plaintiff will have to undergo such treatment. *E.g., Boggs*, at 2026-Ohio-210, ¶ 96-98 (1st Dist.) (future medical expenses awards upheld where an expert testified that it was a medical certainty that plaintiffs would need a fusion procedure at the L4-L5 vertebrae that would cost anywhere between $150,000 to $300,000).

{¶37} Because the record lacks expert testimony, as to each plaintiff, establishing the anticipated course of future treatment, the likelihood that such treatment will be required, and the projected costs associated with that treatment, it contains insufficient evidence to sustain awards of future medical damages. Accordingly, we vacate the awards for future medical damages.

{¶38} In their last argument under this assignment, Durrani asserts that the trial court erred by denying their motion for a setoff based on plaintiffs' settlement with other tortfeasors. Durrani argues that the Southern District of Ohio's decision in *Gorsha v. Clark* renders our interpretation of R.C. 2301.28(A) in *Adams v. Durrani* incorrect. *Gorsha v. Clark*, 2022 U.S. Dist. LEXIS 16485 *6-8 (S.D. Ohio Jan. 31, 2022); *Adams*, 2022-Ohio-60 (1st Dist.).

{¶39} This argument has merit. *See Fenner*, 2025-Ohio-4477, at ¶ 121 (1st Dist.); *Haggard*, 2025-Ohio-5327, at ¶ 83-86 (1st Dist.). In *Fenner*, we overruled *Adams* in part and held that Durrani is entitled to a setoff under R.C. 2307.28(A). *Id.*

15

at ¶ 128. Thus, we similarly hold today that Durrani is entitled to a setoff.

**{¶40}** We sustain Durrani's third assignment of error as to the issues of setoff and future medical expenses. It is overruled in all other respects. The cause is remanded to the trial court to determine the amount of setoff to which Durrani is entitled. The awards for future medical damages are vacated.

### D. Fourth Assignment of Error

**{¶41}** In their fourth and final assignment of error, Durrani argues that the trial court should not have awarded prejudgment interest because plaintiffs did not make good-faith efforts to settle their cases.

**{¶42}** "A trial court 'shall' award prejudgment interest when it determines that R.C. 1343.03(C)'s requirements have been met: (1) the party seeking prejudgment interest must petition the court; and the trial court (2) held a hearing on the motion; (3) found that the nonmoving party failed to make a good-faith effort to settle; and (4) found that the moving party made a good-faith effort to settle the case." *Bender,* 2024-Ohio-1258, at ¶ 150 (1st Dist.), quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 658 (1994).

**{¶43}** Prejudgment interest awards are not discretionary if the trial court determines that the moving party met the statutory requirements. *Id*. at ¶ 151. But, "the trial court has discretion to determine whether a party acted in good faith" based upon evidence of the parties' settlement efforts. *Id.* We will not overturn a trial court's prejudgment interest award absent an abuse of discretion. *Id.*

**{¶44}** The Supreme Court of Ohio defines good faith in the negative. "A party did not fail to make a good-faith pretrial effort to settle when it '(1) fully cooperated in discovery proceedings, (2) rationally evaluated [its] risks and potential liability, (3) [did] not attempt[] to unnecessarily delay any of the proceedings, and (4) made a good

faith monetary settlement offer or responded in good faith to an offer from the other party.'" *Id.* at ¶ 153, quoting *Moskovitz* at 658-659.

{¶45} In finding that plaintiffs were entitled to prejudgment interest here, the trial court found that the plaintiffs made good faith efforts to settle their cases. Durrani argues that plaintiffs did not make good faith efforts to settle, because plaintiffs made an oral settlement demand of $400,000 on the first day of trial at the "eleventh hour[.]"

{¶46} The trial court here did not abuse its discretion in finding that plaintiffs made good faith efforts to settle their cases. *See Boggs*, 2026-Ohio-210, at ¶ 108 (1st Dist.) (holding that where plaintiffs' pretrial settlement offers were based on objectively reasonable beliefs that they could be awarded those amounts, plaintiffs' demands were made in good faith).

{¶47} Notably, Durrani leaves out the trial court's finding that they failed to make a good faith effort to settle. In June 2024, Durrani made a global settlement offer of $4,000,000 to all remaining plaintiffs. Approximately 400 plaintiffs remained at that time. Accordingly, had plaintiffs accepted that offer, each plaintiff would have received roughly $10,000 (well below what plaintiffs received at trial).

{¶48} In *Bender*, we held that because Durrani made no settlement offers, "[t]here was some competent, credible evidence supporting the trial court's bad faith finding." *Bender*, 2024-Ohio-1258, at ¶ 160 (1st Dist.).

{¶49} The facts are slightly different here, because Durrani did make a global settlement offer. But given how low that offer was, there is nothing in the record to show that the trial court abused its discretion when it determined that Durrani did not make a good faith effort to settle. "A trial court has wide discretion in deciding whether to award prejudgment interest based on evidence of the parties' settlement efforts."

*Id.* at ¶ 151, quoting *Jeffrey v. Marietta Mem. Hosp.*, 2013-Ohio-1055, ¶ 80 (10th Dist.).

**{¶50}**  The trial court did not err in awarding prejudgment interest.  The fourth assignment of error is overruled.

### III.  Conclusion

**{¶51}**  Durrani's first, second, and fourth assignments of error are overruled. The third assignment of error is sustained as it relates to setoff and future medical expenses.  It is overruled in all other respects.

**{¶52}**  The awards for future medical expenses are vacated.  The judgments are reversed in part and the cause is remanded for the trial court to determine the amount of setoff to which Durrani is entitled.  The judgments are affirmed in all other respects.

Judgment accordingly.

**MOORE, J.,** concurs.
**ZAYAS, P.J.,** concurs separately.

**ZAYAS, P.J.,** concurring separately.

**{¶53}**  In this appeal, we are once again presented with a number of issues that this court has previously addressed in similar cases concerning defendants-appellees Durrani and CAST.  I concur in the majority's opinion where—as set forth in the majority's opinion—this appeal is, in large part, resolved by looking to the past precedent of this court.  *See generally, e.g., Worley v. Durrani*, 2025-Ohio-2245, ¶ 18 (1st Dist.), quoting *Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 2020-Ohio-2694, ¶ 13 (10th Dist.) ("'Under the doctrine of stare decisis, courts follow controlling precedent, thereby creating stability and predictability in our legal system.'").

**{¶54}**  I write separately to note and adopt my concurrences in *Fenner v. Durrani*, 2025-Ohio-4477, ¶ 130, 133-147 (1st Dist.), and *Boggs v. Durrani*, 2026-

Ohio-210, ¶ 114-123 (1st Dist.), clarifying the proper postjudgment considerations when assessing prejudice from the joinder of trials under Civ.R. 42. Like in those cases, I concur with the majority's resolution of the first assignment of error where the Durrani and CAST have failed to show that reversal on the basis of actual prejudice was warranted here.